## Commonwealth ex rel. v. Slakoff

————————————, for relator.

————————————, for respondent.

BURCH, J., July 6, 1944.—On February 25, 1933, the Circuit Court of Berkeley County, West Virginia, entered its decree in chancery on a bill of complaint by Benjamin Slakoff dissolving the marriage between Benjamin Slakoff and Sarah Slakoff, and divorcing them from each other. The alleged grounds for divorce were desertion by the wife in 1924, in the City of Philadelphia, Pa., and extreme and repeated cruelty.

On June 6, 1933, Sarah Slakoff filed her petition in the Domestic Relations Division of the Municipal Court wherein she alleged that she resided at 5416 Berks Street, Philadelphia; that she was the wife of Benjamin A. Slakoff and was married to him on January 17, 1911, in Philadelphia; that said defendant as of July 1, 1926, without reasonable cause separated himself from her and his minor child, Rosalie, and had since neglected to maintain her and the child; wherefore, she sought support for herself and minor child.

On June 30, 1933, Slakoff submitted to the jurisdiction of the court. After a hearing held on that day the court made a temporary order of $9 a week for the wife and child. At that hearing he conceded his obligation to support Sarah Slakoff and his minor daughter, Rosalie, and did not object to an order. Nor did he plead or raise the question of the West Virginia divorce, nor plead or offer any evidence of desertion or cruelty by the wife.

On August 20, 1936, Slakoff came before the court on an attachment for failure to comply with the order. At that time he claimed the order was excessive. The

court after a hearing reduced the order to $5 a week and $2 on arrears for the wife only, as the daughter, Rosalie, had attained the age of 18 years and had finished her education.

On March 17, 1943, the said Benjamin A. Slakoff filed a petition to vacate the order and remit the arrears, wherein he alleged that he obtained a divorce from Sarah Slakoff in 1931. An answer was filed by Sarah Slakoff to this petition denying that any decree of divorce valid under the Pennsylvania laws was obtained by Benjamin A. Slakoff against deponent in West Virginia in 1933. On said March 17, 1943, Sarah Slakoff filed her petition to have the order increased. On February 8, 1944, Slakoff amended his petition to vacate by changing the date alleged as the date of the divorce to February 25, 1933, to conform to the date of the divorce decree.

On April 24, 1944, the parties stipulated of record that the court might render its decision on the petition to vacate the order without at that time rendering a decision on the petition to increase the order and that both parties should have an opportunity later to offer testimony on the petition to increase. Therefore, the court at this time is required to decide only whether or not the order for support of Sarah Slakoff should be vacated.

The question is whether the decree of the West Virginia court constitutes ground to vacate an order for support entered by this court. If the jurisdictional facts were such as to confer jurisdiction on the West Virginia court, then the divorce is consistent with the full faith and credit requirements of the Federal Constitution (art. IV, sec. 1) and the enabling act of Congress (Act of March 27, 1804, c. 56, §2, 2 Stat. at L. 229) (U. S. Rev. Stat., §905, 28 U. S. C. §687). On the other hand, if the jurisdictional facts are insufficient to confer jurisdiction on the West Virginia court, then the divorce decree is inconsistent with the

full faith and credit requirements of the Federal Constitution and the act of Congress.

In Commonwealth ex rel. Esenwein v. Esenwein, 348 Pa. 455, 457 (1944), the Supreme Court said:

"There is no doubt of the power of the courts below to inquire into the jurisdictional facts necessary to confer jurisdiction on the Nevada Court: Bell v. Bell, 181 U. S. 175; Streitwolf v. Streitwolf, 181 U. S. 179; Andrews v. Andrews, 188 U. S. 15; German Savings and Loan Society v. Dormitzer, 192 U. S. 125; Com. ex rel. v. Yarnell, 313 Pa. 244, 251; Beale, Conflict of Laws (1935), sections 111.1 and 111.2."

Slakoff placed in evidence the divorce decree of the West Virginia court. However, he did not rest on the divorce decree alone but offered in evidence the reconstructed record of the divorce proceedings in West Virginia.

It appears from the record in our court that the record of the divorce proceedings, including the decree, had disappeared from the files of the West Virginia court, but that the decree, having been entered on that court's docket, was available. In pursuant of the West Virginia Code, chap. 39, art. 3, sec. 5 (p. 1542 of 1943 edition of the code) Slakoff undertook to reconstruct the record in the West Virginia court by furnishing and supplying proof of such lost record.

Although the petition of Sarah Slakoff for support, as heretofore stated, alleged that she was Slakoff's wife and that defendant without reasonable cause had separated himself from her on July 1, 1926, and had since neglected to support her, Slakoff made no denial at that time either of the existing marriage or of the desertion, nor did he offer any evidence of desertion and cruelty on the part of Sarah Slakoff in Philadelphia, where he alleged in his divorce proceedings the desertion and cruelty on the part of the said Sarah Slakoff had occurred. If, in the proceedings for support in this

court, Slakoff had pleaded the divorce obtained by him in West Virginia and the court had ruled that it did not preclude his wife's right to support in Pennsylvania, he could still dispute her right to support on the ground of desertion or cruelty. In Commonwealth v. Henderson, 143 Pa. Superior Ct. 347, 350 (1940), it was said that ". . . the only 'reasonable cause' justifying a husband in refusing to support his wife is conduct on her part which would be a valid ground for a decree in divorce: Com. ex rel. Herman v. Herman, 95 Pa. Superior Ct. 510; Com. ex rel. v. Goldstein, 105 Pa. Superior Ct. 194, 160 A. 158."

At the hearing in this court Slakoff, although he had alleged in the divorce proceedings that he was on November 28, 1932, and for more than two years next preceding that date had been an actual resident and bona fide citizen of Berkeley County, W. Va., submitted himself to the jurisdiction of the Municipal Court of Philadelphia as a domiciliary of Pennsylvania. Clearly, he could not be domiciled in West Virginia and Pennsylvania at one and the same time. If West Virginia had been the matrimonial domicile of Slakoff, and if service of the divorce proceedings had been obtained in accordance with the West Virginia laws, the decree would be entitled to full faith and credit under the Constitution of the United States. But the order of support adjudicated that he was a domiciliary of Pennsylvania. We will consider the question of service of process in the West Virginia proceedings later herein.

The divorce laws of West Virginia provide, inter alia, that the party suing for divorce must be an actual bona fide resident of that State for at least two years preceding the commencement of the proceedings: West Virginia Code, chap. 48, art. 2, sec. 8.

On February 8, 1944, Slakoff was called as if under cross-examination by Sarah Slakoff at a hearing on his petition now before the court. At that time Slakoff testified in substance that he went to Martinsburg,

W. Va., in about September 1930, where he obtained
a position; that about Easter, 1933, he left Martins-
burg, and went to New York; that he worked in Cin-
cinnati, Ohio, for 12 months; that he worked in Cin-
cinnati for four months and went from Cincinnati to
Martinsburg, W. Va. He testified:

"Q. Were you ever in Auburn, New York?

A. I was only a few months in Auburn. From Cin-
cinnati I went to Auburn.

Q. You went to Auburn from Cincinnati?

A. I was only there two or three months.

Q. Were you ever in Auburn, New York?

A. Yes, sir.

Q. Then from Auburn, New York, where did you go?

A. I went to Martinsburg.

Q. That was in 1931?

A. That is right."

However, before that he testified that he worked at
the Auburn State Prison in New York but doesn't re-
member whether it was in 1931 or not.

Slakoff's testimony at this hearing fails to show defi-
nitely whether he went from Cincinnati to Martins-
burg, W. Va., or from Cincinnati to Auburn, N. Y.
His testimony is contradictory in this respect. How-
ever, he admits employment at the State prison in
Auburn, N. Y., which he said occurred in 1931. He
does not remember whether he had a Marmon car regis-
tered in New York State in 1931. However, the certifi-
cate from the Bureau of Motor Vehicles in New York,
offered in evidence by Sarah Slakoff, shows that a 1929
Marmon coupe for the year 1931 was registered in the
name of Benjamin Slakoff, address, Osborne House,
Auburn, N. Y. Slakoff's testimony with respect to his
domicile is vague, indefinite, and contradictory. After
considering it and all the evidence in the case, we be-
lieve and find that Slakoff was employed for some
months during the year 1931 at Auburn, N. Y., at a
time when he contends he was employed at and resided
in Martinsburg, W. Va.

When Slakoff testified at the hearing in this court his memory failed him with respect to important facts and obviously his testimony was designed to meet the exigencies of the immediate situation. For example, at the hearing on June 30, 1933, Slakoff's evidence shows that he had been in business in New York City for himself from at least May 1, 1933, or April 1, 1933. On August 20, 1936, when before the court on an attachment for failure to pay the order of support he testified as follows:

"Q. You are in business for yourself?

A. No, it is a corporation, my wife, she is interested in it and I am just designing. .

Q. Running it for your wife.

A. Yes.

Q. What is that business?

A. Manufacturing ladies' apparel, sport wear. . . .

THE COURT:

Q. Wife no. 2?

MR. LEVY:

A. Yes."

(Sarah Slakoff was wife no. 1.)

On February 17, 1937, when again before the court on an attachment for failure to pay the order, his counsel in New York by letter dated February 16, 1937, made part of the record, stated that the "corporation was organized and controlled by Mr. Benjamin Slakoff and his partner Jack Daniels" and that the same was then in bankruptcy and had been adjudicated a bankrupt on December 17, 1936.

The relief sought by Slakoff is predicated upon the decision of the Supreme Court of the United States in Williams et al. v. North Carolina, 317 U. S. 287 (1942). The question here is not that decided in that case. In that case it was assumed that petitioners had a bona fide domicile in Nevada. In the case at bar the question of the bona fide domicile of Slakoff is directly in controversy. At page 302 in Williams et al. v. North Carolina, supra, the court stated:

"In the first place, we repeat that in this case we must assume that petitioners had a *bona fide* domicil in Nevada, not that the Nevada domicil was a sham. We thus have no question on the present record whether a divorce decree granted by the courts of one State to a resident, as distinguished from a domiciliary, is entitled to full faith and credit in another State. Nor do we reach here the question as to the power of North Carolina to refuse full faith and credit to Nevada divorce decrees because, contrary to the findings of the Nevada court, North Carolina finds that no *bona fide* domicil was acquired in Nevada."

Under the West Virginia code a lost record may be reconstructed through proceedings by bill in equity. In his bill to reconstruct the record of divorce in the West Virginia court, Slakoff averred in substance, inter alia, that he was on November 28, 1932, and for more than two years next preceding that date had been an actual resident and bona fide citizen of Berkeley County, W. Va., and that defendant was a nonresident of said State; that he had set forth in his original bill of complaint in divorce the exact residence and address of defendant in Philadelphia, Pa. It should be noted at this point that the bill in equity fails, however, to show the exact residence and address of defendant as set forth in the original bill of complaint in divorce, nor is the reconstructed record complete in that it fails to prove any service either actual or substituted upon the wife, the respondent. Slakoff knew at the time of the divorce proceedings that his wife resided in 1930, 1931, 1932, and 1933, and prior thereto at 5416 Berks Street, Philadelphia. The original proof of publication is missing, it having been attached to the affidavit of John W. Barger, publisher of the Berkeley County News, made on December 30, 1932, and no proof of publication is furnished in the reconstructed record. Therefore, it is not shown that any service of the proceedings was made on Sarah Slakoff or that any notice

of the proceedings was given. On the other hand, the record in this court sustains Sarah Slakoff's contention that no notice of any kind was given to her but that she first heard of the divorce in the spring or early summer of 1933. Apparently sometime during the spring of 1933, after the divorce, Slakoff came to Philadelphia, and at a time when he was endeavoring to open his own business in New York City stated to his wife and son:

"I am working, I can make a living. If you go with me to New York, if you give me a few hundred dollars I can start up and make a living."

And again in the notes of testimony at a hearing on February 17, 1937, on an attachment in our court he stated as follows:

"Q. It was not until June of 1933 they could finally serve you with papers and bring you in here to make you support your wife and children?

A. My boy was with me in New York, she took him back. This time he came back from New York, she find herself different, she was following me with papers, she find herself divorced.

Q. You got a divorce?

A. In West Virginia."

Again on February 8, 1944, Sarah Slakoff testified that she never knew where her husband was and never received any notice of the divorce until her son went to New York to work for his father and found the divorce papers, which as we have said before was in the spring of 1933. (The son died some years ago.) This fact is verified by the testimony of the daughter, Rosalie. Shortly after that time Sarah Slakoff sought an order for support through the Municipal Court. In fact, she testified that she made efforts to locate her husband in 1930, 1931, and 1932. It was during these efforts that she obtained the information from the Commissioner of Motor Vehicles, Auburn Division, in New York State, that for the year 1931 an automobile was registered in Benjamin Slakoff's name with the address as Osborne House, Auburn, N. Y.

It is, therefore, clear that respondent had no knowledge of the divorce proceedings nor had she any notice in the proceedings, and that Slakoff well knew where respondent was during the divorce proceedings.

It, therefore, follows that since there was no personal service or substituted service, and that respondent's whereabouts were known, no method of service was employed which was reasonably calculated to give Sarah Slakoff knowledge of the West Virginia proceeding and an opportunity to be heard. Assuming that the parties were both domiciled in West Virginia the divorce would be invalid without proper notice; a fortiori, the divorce is invalid where respondent is domiciled in another State and receives no notice.

" 'A state cannot exercise through its courts judicial jurisdiction over the status of a person, unless a method of notification is employed which is reasonably calculated to give him knowledge of the attempted exercise of jurisdiction and an opportunity to be heard' ": Commonwealth v. Custer, 145 Pa. Superior Court 535, 543 (1941).

The A. L. I. Restatement of Conflict of Laws, §109, com. (B), holds that the failure to give a proper notice makes invalid a decree affecting defendant's status, and jurisdiction attempted to be obtained in this manner is a violation of due process (fourteenth amendment of the United States Constitution).

In the case of Williams et al. v. North Carolina, supra, relied upon by Slakoff, notice was given: In the Williams case by personal service in North Carolina of the Nevada summons, and in the Hendrix case by mailing the copy of the summons to North Carolina.

We, therefore, find (1) that Slakoff, the petitioner, was not an actual bona fide resident of West Virginia within the statutory requirements provided by the law of that State, nor was he domiciled in that State; (2) that there was no service of the divorce proceedings upon petitioner's wife, nor was there any method of

notification employed in the divorce proceedings reasonably calculated to give Sarah Slakoff knowledge of the attempted exercise of jurisdiction in West Virginia and an opportunity to be heard; and (3) that the West Virginia decree does not defeat Sarah Slakoff's right to an order for support in Pennsylvania.

*Order*

The petition of Benjamin A. Slakoff to vacate the order of support and remit arrears is dismissed.