# Davis *v.* Davis, Appellant.

*Divorce—Adultery—Domicile.*

Where a libellant in an action of divorce had acquired a residence in the county in which the libel was filed, a temporary visit to a friend who maintained a residence in an adjoining county did not constitute a change of domicile. Having acquired one domicile it will be presumed to continue until another sole domicile has been acquired by actual residence, coupled with the intention of aban-

doning the domicile of origin. This change must be *animo et facto* and the burden of proof must be on the one who asserts the change.

A divorce on the ground of adultery is properly granted where the evidence is such as to lead the guarded discretion of any reasonable and just person to the conclusion of the guilt of the respondent.

Argued March 18, 1927.   Appeal No. 54, October T., 1927, by respondent from the decree of C. P. No. 4, Philadelphia County, December T., 1925, No. 1201, in the case of Samuel D. Davis v. Josephine E. Davis. Before Porter, P. J., Henderson, Trexler, Keller, Linn, Gawthrop and Cunningham, JJ. Affirmed.

Libel in divorce.   Before Audenried, J.

The facts are stated in the opinion of the Superior Court.

The case was referred to Frank M. Riter, Esq., as Master, who recommended that the divorce be granted.

On exceptions to the Master's report, the court dismissed the exceptions and granted a divorce in the following opinion:

It was said in the brief submitted to us by counsel for the respondent, ''The real question involved in the exceptions to the Master's report is as to whether the testimony submitted by the libellant and his witnesses was sufficient to warrant the Master in concluding that the allegations of the libel as to adultery have been proved.'' This question alone was argued before the Court. The question of the jurisdiction of the Court is, however, raised by the respondent's general exceptions to the Master's recommendation of a decree of divorce and his failure to recommend that the libel be dismissed. For this reason, and because, apart from that, it is our duty to take cognizance of it of our own motion, we have considered the evidence with the question in mind whether, on the facts established, we have authority, under the law, to dispose of the case.

The libel of one seeking divorce must be presented

to the Judges of the Court of Common Pleas of "the proper county where the injured party resides." The libellant must be a citizen of the Commonwealth or must have resided therein for one year.

The libellant was born in Pennsylvania, and he has been a citizen of that State all his life. He is chief chemist for the George D. Wetherill Company of Philadelphia, and has held this position since 1916. The libellant and the respondent were married at Allenhurst, near Asbury Park, New Jersey, on April 28, 1915. In the following fall they established a home in the city of Philadelphia, and two years later moved to No. 1137 South 60th Street there. In that home they lived together until the night of August 5, 1925, the date of the respondent's alleged adultery. On the morning of the next day, the libellant left the house and took lodgings at a hotel at Ninth and Chestnut Streets. There he stayed for several days. During that period he signed and swore to his libel, which, however, was not filed until December 1, 1925. Meantime he had accepted the invitation of his friends, Mr. and Mrs. Haldt, to make his home with them, and had joined them at a country house near Langhorne, in Bucks County, that they were then occupying. The Haldts had resided at No. 6142 Morton Street, in Germantown, Philadelphia. They still own that house, but have not returned to it. It was their "address" in 1926. The libellant is no longer with them. He now lives with his aunt at No. 829 North 63rd St., Philadelphia. The evidence in relation to the foregoing facts is not contradicted.

The third paragraph of the libel avers that the residence of libellant is "at the corner of 9th and Chestnut Streets in the City of Philadelphia in the State of Pennsylvania and he has been a resident of the State of Pennsylvania for thirty-seven years previous to the filing of the libel." The third paragraph of the respondent's answer reads as follows: "I admit all of

the averments of this paragraph except that as to the residence of libellant. I am informed, believe and therefore aver that he lives and has lived at 6142 Morton Street, Philadelphia, and does not live at the corner of Ninth and Chestnut Streets.''

The libellant claims that although, when his libel was filed he no longer lived at the hotel therein mentioned, he was nevertheless a resident of Philadelphia County, because he had no intention, when he accepted the hospitable invitation of Mr. and Mrs. Haldt, to establish a residence in Bucks County. Philadelphia had been, undoubtedly, his place of residence. To fix on him a residence elsewhere, evidence of a clear intent on his part to abandon his original residence is necessary. This we think is lacking. His willingness to make his home with his friends did not imply a purpose on his part to become permanently an inhabitant of Langhorne. They had gone there quite recently. They still retained their home in Germantown. That was still their address. His business headquarters were in Philadelphia. The respondent, whose answer was sworn to in December, 1925, (probably as early as the 8th of that month, the date when she acknowledged her warrant of attorney to her counsel), was informed and believed that he was and had been living at 6142 Morton Street in Philadelphia.

We are of the opinion that the libellant's stay at Langhorne amounted to nothing more than a temporary sojourn, which did not operate to deprive him of the residence that he had previously established in this county; that, therefore, his libel was properly filed; and that this court has jurisdiction over the case.

Upon the evidence the conclusion that the respondent committed adultery with W. O. Richardson, as alleged by her husband, is irresistible.

In the summer of 1925 Richardson was a married man. He lived at No. 3249 North 13th Street. He and his wife had been acquainted with Mr. and Mrs. Davis

for five years. These four persons had been intimate friends, but the friendship between the men had weakened. Davis objected to Richardson's visits to his home. The latter, however, continued to call there, and frequently took Mrs. Davis out in his motor car. On several occasions they were observed exchanging kisses as they rode together.

On August 5th Mrs. Davis spent the day with her little daughter, who was boarding at Atlantic City. Before she left home that morning she had heard the libellant say that he was to leave in the evening for Boston on a business trip of several days. She returned to West Philadelphia Station by a train that reached there at about 8.20 p. m. There she found Richardson awaiting her. He had learned by inquiry at her home that her return that evening was expected. They greeted each other with a kiss, and Richardson proposed that they dine together at Green Hill Farms, a hotel and restaurant situated on the Lancaster Road just outside of this City. His invitation was accepted, and they rode to the hotel together in his automobile.

There Richardson asked for a room and bath. Accommodations on the fourth floor of the hotel were assigned to him. He signed the Hotel Register with the names "Mr. and Mrs. W. O. Richards." The couple were taken to the room by a bellboy who carried the man's valise. The room into which they were ushered was a bedchamber. It was furnished with two single beds. Connected with it was a private bathroom. Richardson ordered dinner, and then went to the garage, where he left his car for repairs to one of its tires. In a short time he returned to the room where Mrs. Davis was waiting. They had arrived at the hotel at about 8.45 p. m.

In the neighborhood of 10.30 p. m. the libellant, who had not set off for Boston as his wife supposed he had, appeared at Green Hill Farms. He had been summoned to the hotel by a telephone message from a de-

tective whom he had employed to observe his wife's actions that evening, his suspicions as to her conduct having been aroused by a statement made to him on the previous day by Mrs. Richardson.

Richardson was called to the hotel office by the libellant, who was permitted by the clerk of the house to telephone to the room. On his arrival a quarrel ensued, which with difficulty was prevented by Davis' detective and Mr. Gallagher, who was with the latter, from ending in fisticuffs.

When Richardson left the hotel, the libellant, his friend Gallagher, and the detective, accompanied by the Hotel clerk, went together to the room to which Mrs. Davis had been taken. She, however, had left it, and was not discovered until some time later, when she was seen to emerge from the front door and immediately re-enter the hotel by a side door. She subsequently made her way home, reaching their house before her husband arrived.

In the room that Mrs. Davis and Richardson had occupied was found the dinner that the latter had ordered. This had not been touched. One of the beds in the room had been disturbed. Its pillow was mussed, and, while the bed covers had not been opened, they presented the appearance of having been "sat on."

Both Richardson and Mrs. Davis, when testifying before the Master, denied that they had committed adultery on the occasion above referred to. No one gave testimony that they had been seen in the act of copulation. They explain their presence alone together in the bedroom by the statement that they wanted dinner and that the respondent's garments were wet with rain and her appearance so disheveled, that she did not want to appear before the guests assembled in the diningroom.

The sexual act is seldom performed in the presence of eye witnesses. Adultery is in most cases established

by circumstantial evidence. No explanation is offered why the respondent consented to take her dinner in an upstairs bedroom without asking that it should be served in a private diningroom. She gave no reasonable explanation of her hiding herself when she had cause to expect that her husband would seek her. The sexual attraction of Richardson and the respondent each for the other is manifested from their repeated embraces under circumstances which render entirely improbable her statements that their kisses were mere marks of platonic affection. The established facts show that these two persons entertained a carnal affection for each other, and that they sought and obtained opportunity to gratify their lust. In the circumstances revealed by the evidence the guarded judgment of a prudent and fair man, not unduly mindful of the weakness of the flesh and the ways of the world, could find nothing consistent with the theory that they omitted to take advantage of it.

The exceptions are dismissed and the report of the Master is approved. A final rule for divorce may issue.

Respondent appealed.

And now, to wit, the twelfth day of November, A. D. 1926, the Master's report in the above case having been approved, the final rule granted, and proof of service of notice of the final rule submitted, on motion of John K. K. Scott, Esquire, attorney for the libellant, the Court, by virtue of the authority vested in it by law, makes the said rule absolute, and decrees that the said Samuel D. Davis, the libellant, and Josephine E. Davis, the respondent, be and are hereby divorced from the bonds of matrimony, and all and every the duties, rights and claims accruing to either of said parties at any time heretofore in pursuance of said marriage, shall henceforth cease and determine, and the said parties shall severally be at liberty to marry again, in

like manner as if they never had been married, except that it is hereby ordered and decreed that during the lifetime of the said Samuel D. Davis, the libellant, the said Josephine E. Davis, the respondent, shall not be permitted to marry William O. Richardson, proof having been given that the said Josephine E. Davis had committed adultery with the said William O. Richardson.

Respondent appealed.

*Error assigned* was the decree of the court granting the divorce.

*Alexander Love, Jr.,* and with him *Ladner & Ladner,* for appellant.

*William T. Connor,* and with him *John R. K. Scott,* for appellee.

PER CURIAM, July 8, 1927:

The opinion filed by the president judge of the court below, which will appear in the report of this case, clearly indicates that the court exercised its independent judgment, without giving undue weight to the findings of the master, in passing upon the questions arising under the evidence presented. We have carefully considered the evidence and are convinced that the court below arrived at the correct conclusion.

The libellant is a native of Pennsylvania and has therein resided during his entire life. He was married to the respondent in 1915, in the State of New Jersey, but very shortly thereafter they established a home in the City of Philadelphia and the evidence conclusively established that they had continuously resided in that city until August 5, 1925, when the appellee, because of the alleged misconduct of the respondent, left the home, in Philadelphia, where he and his wife had resided, with the father and mother of the wife, and went to the Ben Franklin Hotel, where he remained a few

days and then upon the invitation of a friend who was a member of the company by which appellee was employed, went to live at the house of that friend at Langhorne, Bucks County, Pennsylvania. The appellee had on August 6, 1925, sworn to the libel in this case, which, however, was not filed by his attorney until December 1, 1925. When he thus swore to the libel he was staying at the Ben Franklin Hotel, in Philadelphia, but when the libel was filed he was staying at the house of his friend in Langhorne. During the time that he was thus living at the house of his friend in Bucks County there was no change in his business relations with the company by which he was employed in the City of Philadelphia. He testified that it never had been his intention to establish a domicile in Bucks County, and abandon his domicile in Philadelphia. The friend with whom he was temporarily living at Langhorne really had a residence in Philadelphia, which he considered his domicile. It is contended on behalf of the appellant, however, that the libellant was not a citizen of Philadelphia County at the time the libel was filed. We are of opinion that this contention is not well founded. The evidence establishes beyond all question that the defendant was domiciled in Philadelphia at the time of the discovery of his wife's infidelity, which discovery caused him to separate from his wife and, as the father and mother of the latter were living in the same house with them, it became necessary for him to leave that house. He first went to a hotel and then accepted the invitation of his friend to live with him at Langhorne. There was nothing in the evidence which would warrant a finding that when the libellant went to stay with his friend at Langhorne, in Bucks County, he had the intention of making that place his permanent home, with domiciliary intent. Having been domiciled in Philadelphia that domicile must be presumed to continue until another sole domicile has

been acquired by actual residence, coupled with the intention of abandoning the domicile of origin. This change must be animo et facto and the burden of proof is on the party who asserts the change: Price v. Price, 156 Pa. 626; Gearing v. Gearing, 83 Pa. Superior Ct. 423. After the completion of libellant's stay with his friend at Langhorne he took up his permanent residence with an aunt at 829 North 63rd St., Philadelphia. Upon consideration of all the evidence we have no doubt that the domicile of the libellant was in Philadelphia, at the time the libel was filed, and the proceeding was properly instituted in that county.

There can be no profit in detailing the circumstances, clearly established by the evidence, which must lead the guarded discretion of any reasonable and just person to the conclusion of the guilt of the respondent. It is impossible to assign any innocent motive for such a meeting as that of the respondent and Richardson at the West Philadelphia station of the Pennsylvania Railroad and their proceeding in the automobile of Richardson to the Green Hill Farms Hotel, where Richardson registered himself and the respondent as man and wife, under an assumed name, whereupon there was assigned to them a bedroom to which they repaired, and there remained for a considerable period. When the libellant appeared upon the scene, he called to the room by telephone and, being answered by Richardson, libellant asked him to come down-stairs. When Richardson came down he denied that he knew where the respondent was. The respondent knowing that libellant had called Richardson, left the room and instead of going down in the elevator walked down the stairway and went into a small reception room. She admitted that she had thus attempted to avoid being seen by her husband. The respondent believed that her husband had gone to Boston, while Richardson had told his wife that he was going to

Wilmington on business and would not be home that night. The testimony with regard to the condition of one of the beds in the room, taken in connection with all the other facts in the case clearly establishes the guilt of the respondent. The assignments of error are dismissed.

The decree is affirmed.