## Brobst *v.* Brobst, Appellant.

Argued March 3, 1952. Before RHODES, P. J., RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ. (HIRT, J., absent).

*Hervey B. Smith,* with him *Smith & Eves,* for appellant.

*Donald A. Lewis,* for appellee.

OPINION BY GUNTHER, J., July 17, 1952:

John C. Brobst instituted this action in divorce charging his wife with indignities and adultery. The charge of indignities was subsequently withdrawn with court approval. The master recommended that a divorce be granted on the ground of adultery. Exceptions to the master's report were dismissed by the court below and and a decree in divorce granted. The wife now appeals.

The parties were married on February 1, 1932, and separated sometime in March, 1950. After a painstaking and independent examination of the record, we are agreed that the court below erred in concluding that the defense of recrimination was not established. We are persuaded that there is ample evidence of a clear and positive nature establishing that the plaintiff was likewise guilty of adultery; that the record is replete with incidents, hereinafter related, showing both opportunity and adulterous inclinations on the part of plaintiff requiring that the decree be reversed and the complaint dismissed.

It is neither necessary nor desirable for us to relate in detail the sordid and reprehensible conduct of the defendant for, assuming, arguendo, that the plaintiff has made out a case of adultery, the record also is replete with sufficient evidence from disinterested witnesses establishing that plaintiff was likewise guilty of similar conduct which under §52 of The Divorce Law

is a perpetual bar. Section 52 of The Divorce Law provides in parts pertinent here that "In any action or suit for divorce for the cause of adultery, if . . . it shall appear in the evidence, that the libellant has been guilty of the like crime . . . it shall be a good defense and a perpetual bar against the same."

Initially, a word concerning the credibility of plaintiff is in order. The master concluded, we think perversely, that plaintiff was to be believed; that his disposition to tell the truth was not impeached in any material respect. We need point only to one incident which to our minds clearly discloses that his testimony must be accepted with extreme caution. He alleged that his wife was guilty of adultery with one Follmer, and that he observed the parties, *flagrante delicto,* by eavesdropping. The master conducted an investigation by going to the scene of the alleged misconduct and making an observation under circumstances precisely the same as those testified to by plaintiff and concluded that it was absolutely impossible to observe defendant and Follmer as plaintiff testified; that plaintiff under no circumstances could have seen the act of adultery as complained of and as testified to by him. Despite this finding of incredible testimony, the master considered plaintiff's further evidence as verity. We have no such confidence in his testimony and conclude that his disposition for telling the truth was seriously and materially impeached. The master in his report tacitly conceded as much for he wrote that "Never has he been connected with a proceeding wherein the testimony has been so unsatisfactory". Even the court below had some doubt on the subject for it said: "We have read the testimony at length and agree that the conduct of *both* parties presents a sordid and reprehensible mode of life". (Italics supplied)

There can be little doubt but that plaintiff was guilty of running around with other women. He was

accused and admitted to running around with a Sarah Goodson, with a Betty Davenport, with Betty Barrett, and with another woman by the name of Felker. It is true as appellee argues that "The testimony of the defendant and her witnesses did not relate to any direct act of adultery by the plaintiff but merely related incidents". A reading of the record in this case discloses, however, that plaintiff's conduct with these other women cannot be accepted by any reasonable person as that of an innocent individual. In regard to the Goodson affair, appellant testified that she saw her husband with Mrs. Goodson on many occasions; that Mrs. Goodson when asked if she kept company with plaintiff avoided the question saying: "Q. And you have kept company with him haven't you? A. Not anymore than anyone else. I never kept company all alone". Mrs. Goodson admitted being with defendant on several occasions; that Mrs. Brobst beat Mrs. Goodson at different times.

Appellant testified that on February 13, 1950, she went to the home of a Mrs. Betty Davenport and found Mrs. Davenport in a night dress and plaintiff in the act of pulling up his pants; that plaintiff kept company with Mrs. Davenport for a period of over a year; that Mrs. Davenport admitted to appellant that she loved plaintiff. Charles Bloomer corroborated appellant's testimony, in part, in his testimony that he saw appellee in the home of Mrs. Davenport "quite a lot of times"; that he saw plaintiff at the Davenport home "after 10 lots of nights". Plaintiff's testimony in part admits that he had been in the Davenport home on several occasions, but tried to explain his presence by saying that it was usually to see Mr. Davenport or to repair her automobile.

Appellant testified that her husband had kept company with a woman by the name of Felker for about

two years beginning in February, 1947; that plaintiff went out with Felker for as many as two and three times a week; that in August, 1947, plaintiff had promised to take appellant to see fireworks in Berwick, but that plaintiff took Emily Felker instead and returned to the Felker apartment around 2:30 a.m.; that appellant broke into the apartment and found her husband under the bed and Emily Felker dressed merely in panties and a brassiere.

Walter Fox, a disinterested witness, testified that he was in the Felker apartment one evening when plaintiff arrived carrying a case of beer; that Emily Felker was in her pajamas when Mr. Fox left, although plaintiff remained. Plaintiff admitted he was in the Felker apartment on at least two occasions but attempted to explain his presence in that he had gone to repair a stove on one occasion and on another to repair a door.

Appellant also testified that her husband was running around with a Betty Barrett who was married to a soldier who at the time was stationed outside of Pennsylvania. Mrs. Barrett lived alone with a small baby in the same apartment as Mr. and Mrs. Walter Fox. Appellant testified that Mrs. Barrett admitted going with appellee and said "I may as well go with him as that trash from Buckhorn, and he is just as good to me as that boyfriend I just lost".

Another witness, Beatrice Brown, testified that when she was baby-sitting for Mrs. Barrett at about 11 p.m. one evening Mrs. Barrett returned home with plaintiff; that the witness heard plaintiff leave about 4 a.m. that morning; that she noticed plaintiff and Mrs. Barrett going through the apartment hall on other occasions; one time about 11 p.m., and on another occasion about 5:30 a.m. Walter Fox corroborated in some material respects the testimony of Beatrice Brown regarding the Barrett affair.

There are other incidents which could be related, but it would only unduly prolong this opinion. The evidence already recited clearly discloses that the testimony of plaintiff cannot be accepted as that of an innocent individual. It is true as appellee argues that the burden of proving the statutory defense of recrimination is on the defendant. Section 52 of the Act of May 2, 1929, P. L. 1237, 23 PS §52. The same degree of certainty necessary to establish the existence of the charge of adultery against defendant is also necessary to prove recrimination. *Jackson v. Jackson,* 49 Pa. Superior Ct. 18, 23; *Isaacs v. Isaacs,* 149 Pa. Superior Ct. 508, 512, 27 A. 2d 531. As was said in *Pierpoint v. Pierpoint,* 108 Pa. Superior Ct. 108, 110, 164 A. 808: "Proof of an adulterous inclination or disposition at the time of the act charged, and of an opportunity to satisfy such inclination, is relevant evidence in such cases, and if occurring under circumstances that would lead the 'guarded discretion of a reasonable and just man to a conclusion of guilt,' is sufficient to justify a decree in divorce."

The court below concluded that although these many incidents establish imprudent and indiscreet conduct, it merely was ground for suspicion; that since no inclination or adulterous disposition was established there was no clear and positive testimony of both opportunity and inclination sufficient to warrant a bar to a decree. We think the foregoing evidence recited is amply sufficient to show that by circumstantial evidence the necessary ingredients to make out the statutory defense of recrimination were present. We think his conduct is not only imprudent and indiscreet, but also is enough to persuade a reasonable mind that he is far from the innocent individual he now tries to portray himself to be.

Decree reversed. Complaint dismissed.