Campbell *v*. Campbell, Appellant.

Argued October 3, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, and WATKINS, JJ. (ERVIN, J., absent).

*Harry J. Gerber*, with him *Rocap & Rocap*, for appellant.

*Robert F. Jackson*, for appellee.

OPINION BY GUNTHER, J., January 21, 1958:

This is an action in divorce by the husband based on grounds of indignities and adultery. After a number of hearings, the master recommended that a decree be granted on both grounds and exceptions were filed. The lower court dismissed the exceptions and filed an opinion sustaining the master's recommendations.

The parties were married on March 28, 1941 in Wilmington, Delaware and took up residence in Philadelphia. Later they moved to Delaware County where they lived together until February of 1951 at which time the plaintiff withdrew from the marital domicile. A son was born of the marriage on July 20, 1942.

The testimony reveals that the main cause of the difficulty between the parties was Thomas Porter, unmarried, who took up residence with the parties prior

to the separation and later, after the separation, continued to reside with defendant after the plaintiff withdrew. Most of the indignities alleged arose out of the conduct between defendant and Porter who was named as co-respondent. The presence of Porter in the home led to many arguments. He received the attentions of defendant to the exclusion of the plaintiff; she went out with Porter socially and on automobile drives; she went to the movies with him, addressed him in affectionate terms, washed his clothes, prepared his meals, packed his lunch box and shared expenses with him at the seashore. Porter gradually but definitely assumed the position of "boss" of the home.

The indignities complained of consisted of complaints on the part of the plaintiff regarding the undue familiarity of the defendant with Porter which caused him embarrassment and unhappiness and further that arguments arose when he remonstrated. Defendant, against the wishes of plaintiff, worked in a taproom for approximately two years and did not get home until the early hours of the morning. She called him vile names to which plaintiff admits he responded but without excessive retaliation. She belittled his work, cursed him with regularity, said she was sorry she ever met him, refused to allow him to visit his relatives or have them or his friends in the home and subjected him to silence, without talking to him for days at a time over a long period of time.

In September 1954, plaintiff and police officers raided the quarters in which defendant and co-respondent lived together in Wildwood, N. J., during the summer months from 1950 to the time of hearing. Thomas Porter admitted that he lived there with defendant and her son in two rooms; however, Mrs. Cunningham, the landlady, testified that they lived there in one room. This fact was admitted by the defendant but stated

that she and Porter occupied different portions of the room separated by a screen. Porter was introduced to Mrs. Cunningham as the defendant's brother. At the time of the raid, Porter was found partly dressed and the defendant was discovered in her pajama pants and halter. The room was rented by defendant who informed the landlady that it would be occupied by herself, her son and her brother. She introduced Porter as her brother. While the testimony of Mrs. Cunningham referred to the activities occurring during the summer of 1950, the evidence disclosed similar arrangements under similar conditions in various places in the neighborhood.

On this appeal questions of adultery and condonation and adultery and recrimination were raised as issues together with the question of whether indignities to the injured spouse were proved.

Adultery in this case may be presumed from the facts and circumstances. Defendant's admission that they lived in one room, her declaration to Mrs. Cunningham, her landlady, that Porter was her brother and the landlady's testimony as to their living together in one room instead of two (as claimed by Porter) leads to the presumption of adultery and goes beyond the mere proof of opportunity. On such evidence, adultery may be inferred.

In *Davis v. Davis*, 91 Pa. Superior Ct. 354, we said:

"It is impossible to assign any innocent motive for such a meeting. . . . where [the co-respondent] registered himself and the respondent . . . under an assumed name, whereupon there was assigned to them a bedroom to which they repaired, and there remained for a considerable period . . ."

In *Naylor v. Naylor*, 59 Pa. Superior Ct. 547, we held:

"It is not necessary to prove the act of adultery, but when a married woman occupies a room in a hotel with a man other than her husband, the law assumes that they were there for no other purpose than to commit the crime of adultery."

Condonation was alleged by the wife and this allegation was seriously considered. Had any credible evidence been produced to indicate that the husband was aware of his wife's adultery prior to the time of the police raid and then, despite such knowledge, resumed marital relations with her, there is no question that such evidence would constitute condonation and defeat his grounds for divorce. There is, however, no testimony which convinces us that the husband knew of his wife's extra-marital relations and subsequently condoned them. Plaintiff admitted sleeping in the same house on several occasions in 1954, but denied resumption of marital relations.

Defendant attempted to justify her conduct with Porter by stating that he lived with her merely as a boarder to help out financially. Although plaintiff demanded that Porter leave their home in March, 1954, defendant excused his continued residence with her on the ground that she acted on her attorney's advice in refusing to permit Porter to leave because Porter was involved in the leasing arrangements. After attempts to get Porter out of the home, defendant changed the locks on the house so that plaintiff could not get into his own home. She further contended that plaintiff's only motive for initiating the divorce action was his desire to marry a girl by the name of Connie Foster. The testimony shows, however, that plaintiff's friendship for Connie Foster commenced after the separation and that since the filing of the divorce, Connie Foster married another man and had moved to Florida. The record is devoid of any evidence of misconduct between

the plaintiff and Connie Foster and the allegation of recrimination is not substantiated by credible and corroborating testimony. In any event, such accusation, occurring after separation and after the grounds for divorce have fully accrued, would not change the status of the plaintiff as being the innocent and injured spouse. *Boyles v. Boyles,* 179 Pa. Superior Ct. 184, 116 A. 2d 248; *Clark v. Clark,* 160 Pa. Superior Ct. 562, 52 A. 2d 351.

We are satisfied that the ground for indignities has been adequately proved in this record. The actions of the defendant with Porter, her treatment of the plaintiff, the series of acts from 1950 to 1954 showing a course of adulterous conduct with Porter amply sustain this ground. Indignities constituting ground for divorce may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement. *Patton v. Patton,* 183 Pa. Superior Ct. 468, 132 A. 2d 915.

A review of the entire record supports the decree on both grounds.

Decree affirmed.