Commonwealth *v.* Levitz, Appellant.

Argued March 16, 1959. Before RHODES, P. J., HIRT, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (GUNTHER, J., absent).

*Robert D. Abrahams*, with him *Harry M. Sablosky*, and *Abrahams & Loewenstein*, for appellant.

*H. A. Dower*, with him *Robert W. Tredinnick*, *James D. Christie*, and *Perkin, Twining & Dower*, and *Smillie, Bean, Davis & Tredinnick*, for appellee.

OPINION BY ERVIN, J., April 16, 1959:

This is an appeal by a husband from the order of the court below refusing to revoke a support order theretofore made for his wife.

On December 28, 1956 President Judge KNIGHT refused an order for the support of the wife because she had taken $10,000.00 from a joint account of herself and husband. In the hearings preceding that order the husband presented proofs in an endeavor to prove that the wife had committed adultery with one Nathan Katz but the court found that the evidence was not sufficient to prove adultery although it did find that the wife was indiscreet. On October 18, 1957 Presi-

dent Judge KNIGHT ordered the husband to pay $140.00 a week toward the maintenance and support of the wife and $25.00 a week for the maintenance and support of a daughter. Again Judge KNIGHT found that the evidence was insufficient to prove the adultery but he said she had been "at least very indiscreet in her conduct with another man" and that "her own testimony gives rise to grave suspicion as to her faithfulness as a wife." The wife testified in the hearing of November 7, 1956 as follows: "Q. Have you had any other kind of an association or connection with Mr. Katz? A. Any other kind? Q. Yes. A. No, I haven't. Business and an occasional dinner date." On February 6, 1958 the husband filed a petition to revoke the order and averred in the petition that his wife had committed adultery with one Saul Kalishman. Hearings were held on March 11 and April 2, 1958 before Judge MORRIS GERBER, President Judge KNIGHT'S term of office having ended on the first Monday of January 1958. Testimony was given at these hearings to show that the wife had met Mr. Kalishman at the Cherry Hill Inn in New Jersey following an arrangement to meet him there. The evidence showed and, in fact, the wife admitted that she had gone to the room of Mr. Kalishman and that after she had been therein for some period of time her husband and three detectives entered the room. The husband testified that Kalishman was "standing there in a white shirt, the collar was open, and he had no necktie on. . . . He had no shoes on. He was in his stocking feet, and his belt buckle was partially opened. He had a drink in his right hand. He seemed rather flustered and asked me what I wanted, and I brushed past him and walked into the room." He further testified that his wife was in a slip and that "No, she didn't have on a dress. She seemed to have a drink in her hand, as I recall. Her

hair was sort of mussed up, and her lipstick was definitely mussed, and I asked her what she was doing there, and she was very incoherent and flustered and couldn't seem to answer." The husband's testimony was corroborated by the detectives and some of them testified that they saw a woman's dress hanging in the closet. Thereafter Nathan Katz, having heard of the Cherry Hill Inn affair, turned over to the husband a bundle of letters written to him by the wife. The letters were written prior to the hearings of October 31 and November 7, 1956. Many quotations could be taken from these letters to show that the wife's association with Nathan Katz went far beyond activities normally associated with business. We do not intend to burden this opinion by quoting extensively from the letters and we will confine our reference to the following: "Tell the truth now, didn't you think of me a little less often this week? Don't be afraid to admit it. It's bound to happen. After all, you made *the* conquests of conquests! There isn't any more you would want from me or to look forward to. And I know I will be telling myself real soon, 'Serves you right.' Oh, Nat, you're such a sweet guy that I have the intense desire to make you happy and to please you, and yet now I feel that I gave myself my own walking papers. I should never have given in to your request. I haven't felt very good or happy about it at all. But what's done is done, so I can't cry over spilled milk.

"Tell me, do you think you would recognize me yet if I passed you by on the street? I bet not. Each time you call again, I'm surprised.

"Surprise me again, baby!"

The wife admitted that these letters were written by her and sent to Nathan Katz. It must also be remembered that she admitted that she had met him a

number of times in New York City, Mr. Katz being a resident of Philadelphia and engaged in the real estate business in Philadelphia. She also admitted having cocktails with him in her hotel rooms and going out to dinner and theater engagements with him on some of these occasions. There are a number of passages in the letters which clearly show that Mrs. Levitz did commit adultery with Mr. Katz. When Mr. Katz was asked specifically whether he stayed overnight in certain hotel rooms in New York with Mrs. Levitz, he refused to answer on the ground that it "may tend to incriminate me."

No request was made for a revocation of the order for the daughter. The court below refused to vacate the support order for the wife. We feel that there was an abuse of discretion in this refusal. While it is true that the findings of the hearing judge on questions of fact, particularly where the credibility of witnesses is concerned, are entitled to be carefully considered, this rule does not apply in favor of deductions or inferences which are made by the hearing judge from the facts which he has found. The conclusions of the trial judge, being no more than his reasoning from the facts, are always reviewable, either by the court in banc or by an appellate court: *Com. ex rel. Gregory v. Gregory,* 188 Pa. Superior Ct. 350, 356, 146 A. 2d 624. In a support action it is a valid defense to the entry of an order that the wife has committed adultery: *Com. ex rel. Brobst v. Brobst,* 173 Pa. Superior Ct. 171, 174, 96 A. 2d 194. In that opinion President Judge RHODES said: "The fact that a husband's own conduct may preclude a divorce from a wife who has committed adultery does not necessarily preserve the legal duty to support her."

In *Com. v. Crabb,* 119 Pa. Superior Ct. 209, 211, 180 A. 902, we said: "Appellant relies upon the rule

that the only reasonable cause justifying a husband in refusing to support his wife is conduct on her part which would be a valid cause for a decree in divorce: Com. ex rel. v. Herman, 95 Pa. Superior Ct. 510, 514, 515, and that the defendant has no cause for divorce because by the Act of May 2, 1929, P. L. 1237, §52 (23 P.S §52), it is provided that: 'In any action or suit for divorce for the cause of adultery, if the respondent shall allege and prove, or it shall appear in evidence, that the libellant has been guilty of a like crime, . . . it shall be a good defense and a perpetual bar.' The rule relied upon does not go so far as to hold that the husband must be innocent of any conduct which would be a bar to the cause for divorce. Under the facts as established, neither of the parties could have obtained a divorce, but that does not establish that the conduct of the appellant did not constitute a valid cause for divorce. A wronged husband or wife may have a valid cause yet their subsequent conduct, such as by collusion or cohabitation, bars their right to a divorce and where the cause is adultery a like offense is a perpetual bar.

"The precise question has not been passed upon by our courts. In the case of Hawkins v. Hawkins, 86 N.E. 468, the Court of Appeals of the State of New York under statutory proceedings for support which provide that defendant might set up in justification the misconduct of the plaintiff, it was held that a wife who has committed adultery is, notwithstanding the fact that her husband has been likewise guilty of adultery, not entitled to judgment of support."

It is well recognized in Pennsylvania that it is not necessary to prove the final act of adultery if the circumstances are such that a reasonable person would conclude that such act had occurred: *Pierpoint v. Pierpoint,* 108 Pa. Superior Ct. 108, 164 A. 808.

A complete statement of the evidentiary problem will be found in Freedman, Law of Marriage and Divorce in Pennsylvania, Vol. 1, 2d ed., at page 456, as follows: "The difficulty of obtaining direct evidence of adultery and the almost universal resort to circumstantial evidence, has given great importance to the doctrine known as the 'inclination and opportunity rule'. Under this doctrine adultery will be presumed where three elements are shown: (1) the adulterous disposition or inclination of the defendant; (2) the adulterous disposition, or inclination, of the co-respondent; and (3) the opportunity created to satisfy their mutual adulterous inclination. The three elements must conjoin. Proof of mere opportunity without adulterous disposition, or of adulterous disposition without opportunity, will not be sufficient. But if the criminal passion is found to exist, proof of opportunity which otherwise would scarcely be sufficient to raise a passing cloud of suspicion will possess a most convincing force." See also *Matchin v. Matchin,* 6 Pa. 332, 338.

For cases where letters have been used to establish the act of adultery, see *Reighter v. Reighter,* 58 Pa. Superior Ct. 636; *Cook v. Cook,* 85 Pa. Superior Ct. 403.

The letters and conduct of Mrs. Levitz, as well as the conduct of both Mr. Katz and Mr. Kalishman, are entirely inconsistent with any platonic relationship and, considering the opportunities they had for companionship and the evident enjoyment they had in each other's society, can lead to no other conclusion than that the wife is guilty of adulterous conduct with them.

The wife obtained the original order of support by perjured testimony and that order should be revoked. In the petition to revoke adultery was alleged with Kalishman in the Cherry Hill Inn. In the original

hearings the adultery was alleged with Nathan Katz. It is argued by the appellee that evidence of adultery with Katz should not have been considered in connection with the final petition to revoke. If the evidence taken at all the hearings established that the wife had committed adultery, then the original order should be revoked. It makes no difference whether the adultery was committed with A or B or either or both of them. It would still be adultery.

The order of October 3, 1958 dismissing the petition to revoke the order of October 18, 1957 is reversed and the order of October 18, 1957 is revoked as to that portion thereof which ordered the husband to pay $140.00 a week toward the maintenance and support of the wife. The order of support for the daughter Linda is not affected by this order.