Henszey *v.* Henszey, Appellant.

Argued December 13, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Harry T. Devine,* with him *Scott and Devine,* for appellant.

*Raymond J. Bradley,* with him *Howard Gittis,* for appellee.

OPINION BY WATKINS, J., June 15, 1961:

This is an appeal from the decree of the Court of Common Pleas of Philadelphia County granting a divorce in favor of W. Harlan Henszey, the appellee husband, and against Rowena Wilhite Henszey, the appellant wife, on the ground of indignities. The parties were married in 1908. The marriage has continued for fifty-two years or more. The husband was 78 years of age and the wife 71 years of age at the time of the hearing. There were seven children born of this marriage, six of whom are still living. At the hearing

before the master three of the children testified on behalf of the father and two on behalf of the wife appellant. The master recommended that a divorce be granted, which recommendation was affirmed by the lower court.

This Court on appeal must consider the evidence de novo, pass on its weight and on the credibility of the witnesses and reach an independent conclusion upon the merits. *Rankin v. Rankin*, 181 Pa. Superior Ct. 414, 124 A. 2d 639 (1956). However, where the credibility of the various witnesses is one of the key questions to be solved as in the instant case, where the opposing parties have given testimony which is diametrically opposed, the judgment of the master on this question of credibility is entitled to the fullest consideration. *Rosen v. Rosen*, 183 Pa. Superior Ct. 103, 128 A. 2d 111 (1956). After a review of the entire record the determinations by the master as to where lies the more credible evidence is found to be reasonable and supported by the record.

This Court has stated many times that it is impossible to lay down a general rule for the determination of what constitutes such indignities which would render the innocent and injured party's condition intolerable and his life burdensome. It has been held however that indignities may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule and any other plain manifestation of settled hate and estrangement. *Trueg v. Trueg*, 190 Pa. Superior Ct. 78, 151 A. 2d 786 (1959). The conduct on the part of the wife which would constitute such an indignity and which is supported by the record is as follows: Defendant continually neglected her household duties, maintained the home in a filthy condition, failed to provide family with meals, so much so that one of the daughters required medical attention

for malnutrition. Defendant slept late every day and often allowing decaying food to remain in the refrigerator which caused terrible odors throughout the house. *Wasson v. Wasson,* 176 Pa. Superior Ct. 534, 108 A. 2d 836 (1954).

The wife used uncommonly dirty and filthy language which she directed at the plaintiff in the presence of their children and also directed at the children themselves. *Campbell v. Campbell,* 185 Pa. Superior Ct. 474, 137 A. 2d 830 (1958). The wife inflicted, on many occasions, serious personal injuries upon her children; she struck one of the daughters on the head with a pot, causing a laceration which required medical attention; she dragged another daughter from her bed by the hair, merely because the girl had soiled her dress; she struck one of the children with a chair on the leg, causing it to bleed; she threw objects, many times, at the children and at her husband; she at one time attempted to strangle one of her sons with a leather belt and with his face discolored, she broke a vase over his head; on another occasion she wounded one of her sons in the thigh when she threw a pair of scissors at him. Defendant admitted slapping the children and using a switch on them. This conduct was called to the attention of the plaintiff, when it was not done in his presence, and the wife threatened to abuse the children when the husband would leave if there was any disagreement between them. *Robinson v. Robinson,* 183 Pa. Superior Ct. 574, 133 A. 2d 259 (1957); *Mayer v. Mayer,* 133 Pa. Superior Ct. 128, 2 A. 2d 37 (1938).

Defendant continuously and falsely accused the plaintiff of adultery, incest and other humiliating charges in the presence of their children. *Miln v. Miln,* 175 Pa. Superior Ct. 613, 106 A. 2d 862 (1954).

The wife on several occasions threatened to kill her husband and threw objects at him, and at one time threw a knife at him, which cut the lobe of his ear.

The wife's attitude toward the plaintiff and his family was one of hatred and contempt and she heaped contumely upon her husband because he was grieving at the death of his mother, whom she referred to as an old bat. The wife constantly expressed regret at having married the plaintiff. She admitted to him that she had been going with another man and even insinuated that she had committed adultery.

The appellant wife seeks to deny the husband the right to a divorce by indicating that he, at times, used vile and abusive language which was directed toward her. However, in view of her conduct and treatment of him and the children, such lapses of gentlemanly conduct must be expected. While the law requires that the plaintiff, in order to qualify for a divorce must be the injured and innocent spouse, this does not mean however that he must be completely blameless. *Green v. Green*, 182 Pa. Superior Ct. 287, 126 A. 2d 477 (1956).

The testimony of the wife appellant appeared to be evasive, and unresponsive, at times vague and uncertain. The testimony on her behalf by one of her daughters was contradicted by a letter in her own hand, which was introduced into evidence.

One question remains and that is whether or not the reconciliation between the parties which was effected in 1944, after a separation which had continued from 1939, and the fact that the parties lived together over such an extended period of time and had seven children during the period when the alleged indignities were committed would effect a condonation and would bar a decree in divorce in this action. We think that this position cannot be maintained as was said by the Supreme Court in *Nixon v. Nixon*, 329 Pa. 256, 198 A. 154 (1938), the resumption of marital relations was merely a factor to be considered in determining the extent of the old treatment suffered. The period between 1949 and the date this action was instituted

cannot be considered since the marital relation had in fact been terminated during this entire period by the separation of the parties.

While the courts are not prone to treat lightly the fact that the parties have maintained a marriage over a long period of time and in the twilight of their lives terminate this relationship, in the instant case, over the entire period of time there were short periods of separation and reconciliation and the evidence substantiates the fact that it was the plaintiff husband who, at the request of his children, would resume cohabitation and attempted to suffer under the treatment directed toward him by his wife, in order to salvage this marriage. However, after the reconciliation, the record indicates that the attitude of the wife-appellant toward the husband was changed but slightly, if at all. The reason for delay in instituting this action for divorce can be known only by the husband. However, under the circumstances of this case, his cause of action was not destroyed because of the reconciliation or because of the lapse of time. Such delay, under the circumstances, appears to be entirely reasonable.

Since this appeal was argued before this Court, we have been advised that W. Harlan Henszey died on February 23, 1961. No suggestion of death or petition for substitution for party appellee has been filed as of this date. "The death of the plaintiff during the pendency of the defendant's appeal from a judgment of divorce does not abate the appeal, and the personal representative of the plaintiff should be substituted as appellee. This seems to be the just rule. Otherwise, a divorce unfounded in fact or in law might be made final against a defendant by the mere fortuity of appellee's death." Freedman, Law of Marriage and Divorce, 2d Ed. §695.

This certainly seems to be the just rule, although the decisions are not so positive. In *Nacrelli v. Nacrelli,*

87 Pa. Superior Ct. 162 (1926), affirmed 288 Pa. 1 (1927), although the question was not raised, the appellee had died after judgment, pending appeal, and this Court reviewed the matter, reversing the judgment and the executors of the appellee were permitted to be substituted before the decision of the Court was made, and were the appellants on appeal to the Supreme Court. Although the question was not raised, the entertaining of the appeal by the Supreme Court indicates its recognition of their right to act.

Judge REXO, speaking for this Court, in *Matuszek v. Matuszek*, 160 Pa. Superior Ct. 526, 52 A. 2d 381 (1947), reviews the entire matter and says, at page 529: "The survival of the action and the right of an appellant to be heard upon an appeal from an adverse final decree in divorce where the successful party is dead depend upon the presence of a property right. Ordinarily the record in a divorce proceeding will not reveal the interest, since the testimony in a divorce case is generally limited to evidence relating to the grounds alleged in the libel, and a property interest is likely to appear only incidentally. Hence it is not necessary that the record affirmatively show that property rights are involved. Thus, in the Upperman case the record did not disclose a property right other than an estate by the entireties, but since the wife, who was the respondent and appellant, died pending the appeal, this court held (p. 352): 'The liability of the husband for the [her] funeral expenses, however, would be such a property right or claim as would be directly involved by the determination of this proceeding.' The court also said: '. . . a divorce proceeding is of such a character that after a decree is entered, other than property rights are involved. The state is still interested in determining whether the divorce proceeding was properly decided.'" The death of the appellee did not abate the appeal.

Decree affirmed.