## Baio *v.* Baio, Appellant.

Argued June 15, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

rear-gument refused October 4, 1961.

*George A. D'Angelo,* for appellant.

*G. Fred DiBona,* for appellee.

OPINION BY WATKINS, J., September 12, 1961:

This is an appeal from the decree of the Court of Common Pleas No. 4 of Philadelphia County granting a divorce in favor of Salvatore Aldo Baio, the husband-appellee, and against Marian Theresa DiOrio Baio, the wife-appellant, because of indignities to the person. The parties were married on July 7, 1946, at St. Thomas Aquinas Church in Philadelphia; and at the time of the hearing they were each 35 years of age. There were no children born of this marriage.

Beginning about two years after the wedding, this was a most unhappy marriage. The trouble seemed to lie in the unbridled jealousy of the wife. The record is replete with incidents and quarrels; reproach and vulgar and profane abuse; all growing out of continuous charges of infidelity. This course of conduct was intermittent from November 1947 and became a daily occurrence from 1957 up to the final separation.

The parties first separated on October 17, 1957, and this action was commenced by the husband on October 22, 1957. A reconciliation was effected by Father Simon of St. Thomas Aquinas Church, and the parties

agreed to "start things all over again, forgetting the past arguments and think about the future."

Within three weeks of this reconciliation the wife's course of conduct was renewed and they again separated on March 8, 1958. Again there was a reconciliation on March 10, 1958 and again the same trouble was repeated so that the husband left finally on June 12, 1958.

As we said in *Henszey v. Henszey,* 195 Pa. Superior Ct. 377, 171 A. 2d 837 (1961), at page 379, "This Court on appeal must consider the evidence de novo, pass on its weight and on the credibility of the witnesses and reach an independent conclusion upon the merits. Rankin v. Rankin, 181 Pa. Superior Ct. 414, 124 A. 2d 639 (1956)." However, the judgment of the master, as to credibility, who has had the opportunity to see and hear the witnesses, is entitled to the fullest consideration and after a careful review of this record we are, as the court below also was, convinced that the master's determination on the matter of the credibility of the witnesses is supported by the record.

We have held that indignities which would render the innocent and injured party's condition intolerable and his life burdensome may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement. *Trueg v. Trueg,* 190 Pa. Superior Ct. 78, 151 A. 2d 786 (1959).

It is unnecessary to recite the long list of abuses suffered by this husband as testified to by him and his witnesses. It is sufficient to point out that she continuously accused him of infidelity; that she accused him of having intercourse with her sister; that the accusations of infidelity were made in the presence of others, including members of the family, friends and strangers; that on times too numerous to detail, she

accused him of having affairs with other men's wives; that she called him a whoremaster, a cheat, a louse and applied other vulgar and profane epithets to him; that she accused him of having an affair with one Kerri Benn, a married woman, in the presence of others; that she called Norman Benn the husband of Kerri Benn and one of the witnesses, on the telephone and complained to him that her husband was having an affair with his wife; she continuously nagged him about other women, using such language as "picked up a bitch" and "was going to get laid"; that this course of conduct was continuous, a daily occurrence, and the arguments and abuse continued day and night until, after several reconciliations, the husband's patience gave out, his health began to fail and his life became so miserable and unbearable that he left her finally and brought this action. This recitation of some of the facts constitutes clearly a manifestation on the part of the wife of settled hate and estrangement. *Henszey v. Henszey*, supra; *Campbell v. Campbell*, 185 Pa. Superior Ct. 474, 137 A. 2d 830 (1958); *Miln v. Miln*, 175 Pa. Superior Ct. 613, 106 A. 2d 862 (1954).

The court below in commenting on the credibility of the witnesses had this to say concerning the testimony: "All of plaintiff's charges were denied categorically by defendant. She admitted there were quarrels, but she denied that she ever used vile, filthy and reproachful language in characterizing plaintiff. It is to be noted at this point that although defendant testified that she never accused plaintiff of any wrongdoing, she did acknowledge that she once followed plaintiff home from work with Eugene Razzano, and further, that she did call Norman Benn to inform him that his wife, Kerri Benn, was causing trouble in her family. Both of these events occurred within the period from August 5, 1957 to June 12, 1958. From the record it was evident that defendant was suspicious of

plaintiff's conduct, although unfounded, and that as a consequence thereof, she acted as a jealous and capricious wife. . . . Our determination, based upon the record, is that the Master reached a proper and meritorious conclusion. The Master was particularly impressed by the testimony of Mr. Bellino and Mr. Benn, as we were. Mr. Bellino, without rancor, presented an honest picture of the parties' relationship. Mr. Benn, a dutiful and faithful husband, and happily married to Kerri Benn, whom defendant so vehemently accused of wrongdoing with plaintiff, testified under the most embarrassing circumstances as to defendant's jealous, vengeful and enraged conduct in persistently calling him at all hours of the day and night to complain of his wife's and plaintiff's unfaithfulness. It was apparent to the Master, as it was to us, that defendant was the guilty party, that it was defendant's conduct based upon unfounded charges of faithlessness and enraged jealousy that caused the indignities to plaintiff. Particularly was this so since there was no evidence of adulterous inclinations or unfaithful conduct on the part of plaintiff. In view of the fact that plaintiff's testimony was unshaken by defendant, and further, that the Master's finding as to credibility was not at variance with the record, there was no reason why the Master's findings should have been reversed."

Freedman, Law of Marriage and Divorce in Pennsylvania, Vol. II, §315, page 719, holds that the rule in Pennsylvania is that false charges of adultery, persisted in and continuous, so as to constitute a course of conduct, without more, amount to indignities.

We have held that continuous unfounded accusations of infidelity when accompanied by other insulting, degrading or humiliating conduct as was present in this case, persisted in for a sufficient length of time, make out a case of indignities. There is an exception if the defendant's suspicions were "reasonable aroused"

but that doesn't appear in this case because the defendant flatly denies that any accusations of infidelity were ever made. *Miln v. Miln,* supra, at page 616. See also: *Hurley v. Hurley,* 180 Pa. Superior Ct. 364, 119 A. 2d 634 (1956); *Brandman v. Brandman,* 185 Pa. Superior Ct. 392, 138 A. 2d 869 (1958).

Decree affirmed.