## Levitz *v.* Levitz, Appellant.

328

Argued September 14, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Edward N. Cahn,* with him *Dower, Kanehann, Huston, McDonald & Cahn,* for appellant.

*Sidney M. DeAngelis,* with him *DeAngelis and Kaufman,* for appellee.

OPINION BY RHODES, P. J., November 15, 1962:

This is an appeal by defendant-wife from a decree of the Court of Common Pleas of Montgomery County awarding the husband an absolute divorce on the ground of the wife's adultery.

The parties were married on December 31, 1936. Plaintiff instituted his action against defendant on May 22, 1956, alleging adultery and indignities as grounds for a divorce. Defendant filed an answer to plaintiff's complaint and also alleged that plaintiff had committed adultery with one Frances Woodside. In an amended complaint on November 10, 1959, plaintiff charged defendant with additional acts of adultery. A second amended complaint was filed on February 4, 1960. After the taking of testimony, the master filed a report on March 21, 1961, in which he recommended that a divorce be granted on the ground of adultery. A supplemental report was filed on May 16, 1961. The case was reopened on August 11, 1961. The master filed a second supplemental report on March 16, 1962, in which he again recommended a divorce in favor of plaintiff on the ground of adultery committed with one Nathan Katz and one Saul Kalichman. The master found that plaintiff had not committed adultery with Frances Woodside and that therefore the defense of recrimination had not been established by defendant. The court below dismissed exceptions to the master's report and entered a decree in divorce on August 20, 1962, from which defendant has appealed.[1]

---

[1] The court below in its opinion found that "The evidence of adultery on the part of the defendant is of such great weight and was so weakly rebutted that it can hardly be seriously disputed" and that "The defendant failed to produce witnesses or depositions which would support her contention that plaintiff committed adultery. The proofs tending to establish that plaintiff committed adultery are not clear and satisfactory, and the defendant has not sustained her burden of proof."

The present appeal by defendant is based upon the single proposition that the decree should be reversed because she has established the defense of recrimination by a preponderance of credible evidence. See Act of May 2, 1929, P. L. 1237, §52, 23 PS §52. She does not here dispute plaintiff's proofs as to her adultery, and contends only that the evidence shows plaintiff was himself guilty of adultery. We have made an independent examination of the record and are of the opinion that the evidence of adultery on defendant's part was so conclusive that it cannot be seriously questioned.

Although the matter is not controlling here, we reversed the Court of Quarter Sessions of Montgomery County and refused defendant support on the ground she was found to have committed adultery with one Nathan Katz. *Com. v. Levitz,* 189 Pa. Superior Ct. 438, 442, 150 A. 2d 581.

The issue presented on this appeal is whether defendant established the defense of recrimination. On appeal we are obliged to review the record and make an independent determination whether the evidence warrants a decree. *Manley v. Manley,* 193 Pa. Superior Ct. 252, 254, 164 A. 2d 113. The master's report and the opinion of the court below contain a review and analysis of all the evidence, which we do not deem necessary to repeat.

The statutory defense of recrimination is based upon the commission of adultery by the plaintiff, and the burden is on the defendant to prove it. The evidence necessary to prove recrimination must have the same degree of certainty necessary to establish the charge of adultery against the defendant. *Isaacs v. Isaacs,* 149 Pa. Superior Ct. 508, 512, 27 A. 2d 531; *Rech v. Rech,* 176 Pa. Superior Ct. 401, 409, 107 A. 2d 601.

The charge of adultery is a serious one, and the proofs must be of such a clear and convincing char-

acter as to leave no other conclusion in the mind of a reasonable person. *Connor v. Connor,* 168 Pa. Superior Ct. 339, 345, 77 A. 2d 697.

Adultery may be inferred from facts and circumstances. *Campbell v. Campbell,* 185 Pa. Superior Ct. 474, 477, 137 A. 2d 830. Under the doctrine known as the "inclination and opportunity rule," adultery will be presumed where these elements are shown: (1) The adulterous disposition or inclination of defendant and co-respondent, and (2) the opportunity created to satisfy their adulterous inclinations. *Pierpoint v. Peirpoint,* 108 Pa. Superior Ct. 108, 110, 164 A. 808; *Brobst v. Brobst,* 171 Pa. Superior Ct. 499, 504, 90 A. 2d 320; *Com. v. Levitz,* supra, 189 Pa. Superior Ct. 438, 444, 150 A. 2d 581.

To establish plaintiff's adultery and her defense of recrimination, defendant relied upon the testimony of Frances Woodside as well as that of Samuel Tropp, a private detective who was hired by defendant.

On July 17, 1961, defendant's counsel sought to reopen the case on the basis of an affidavit of Frances Woodside, dated July 5, 1961, wherein Frances Woodside made many statements which tended to show that she and Leon Levitz, the plaintiff, were intimate at various times and places, covering the period between 1954 and 1960, including registration in several hotels as husband and wife. The case was reopened solely for the purpose of taking the testimony of Frances Woodside who testified at length before the master on October 13, 1961. At the time of this hearing Frances Woodside was represented by her own counsel; she was a mental patient in the Pennsylvania Institute, Philadelphia, and was accompanied by a registered nurse in the event she needed treatment during the hearing. She stated that plaintiff had slept at her apartment when other persons were present, but never with her; that a loan was made to purchase her residence in

Paoli; that plaintiff on occasion had left clothing at her home; that she made a trip with plaintiff and a group of people to Tucson, Arizona, in 1954 or 1955; and that she had financial dealings with plaintiff. Her testimony at this hearing on October 13, 1961, was in many ways at variance with her statements in her affidavit of July 5, 1961. Under cross-examination by plaintiff's counsel she admitted telling defendant that all the statements in her affidavit of July 5, 1961, were false. Subsequently the master was advised by new counsel engaged by Frances Woodside that she had executed another affidavit on January 24, 1962, to the effect that all of her testimony at the hearing on October 13, 1961, was false, as she was mentally incompetent at the time, and accordingly requested another hearing. The master reopened the proceeding, and at a hearing held on February 27, 1962, Frances Woodside testified that she did not remember executing the affidavit of July 5, 1961, or testifying before the master at the prior hearing on October 13, 1961. A recess was declared by the master during which time the witness read the notes of testimony at the prior hearing, following which she testified that her prior testimony was untrue as was the first affidavit she executed.

The private detective testified concerning his observations. Briefly, three incidents related by him merit consideration. The first of these is the occasion at the Wildman Arms Apartment on May 2, 1956, when Tropp saw the automobile of plaintiff in the parking lot at 8 p.m. and saw plaintiff leave the apartment of Frances Woodside at 10:35 a.m. on the following morning. The second occasion was on June 23, 1957, when Tropp found the station wagon of plaintiff in a railroad yard at 5 a.m. about five blocks from Frances Woodside's residence. That afternoon plaintiff was observed on the lawn of Frances Woodside's home, and at about 4:45 p.m. plaintiff was driven to his station

wagon by Frances Woodside. The third incident occurred on July 2 and 3, 1957. On the evening of July 2, 1957, Tropp observed the residence from 8 p.m. until 12 a.m. at which time the lights went out. There appeared to be more than two people in the home and he heard music and laughter. About 5 a.m. on the following morning Tropp located plaintiff's automobile parked about 300 yards from the home, and at about 11 a.m. plaintiff left the residence in the company of a woman—not Frances Woodside. On each of these three occasions Tropp admitted that he did not keep the apartment or the residence under continuous observation during the period covered.

Upon reviewing the evidence the master found that "The conflicting testimony of Frances Woodside, the plaintiff's alleged paramour is not worthy of belief." The court below found ". . . Frances Woodside unworthy of credence whether she be regarded as a witness for the plaintiff or for the defendant."

We agree with the master and the court below that the testimony of Frances Woodside is unworthy of belief. The master's report, although advisory only, is to be given the fullest consideration as regards the credibility of witnesses whom he has seen and heard. *Manley v. Manley,* supra, 193 Pa. Superior Ct. 252, 254, 164 A. 2d 113. Nor is the testimony of the detective Tropp sufficient to establish adultery by plaintiff with Frances Woodside. It was not of such a clear or convincing character as to leave no other conclusion in the mind of a reasonable person. Although opportunity may have been indicated, there was no evidence of disposition or inclination on the part of plaintiff. Adultery cannot be inferred from the mere existence of opportunity. See *Com. v. Donald,* 192 Pa. Superior Ct. 276, 282, 161 A. 2d 915.

We are of the opinion that defendant failed to prove that plaintiff committed adultery with the alleged co-

respondent and thus did not establish her defense of recrimination. The charges in plaintiff's complaint that defendant had committed adultery having been sustained, the decree of the court below will be affirmed.

The decree of the court below is affirmed.