## Margolis *v.* Margolis, Appellant.

Argued March 21, 1963. Before RHODES, P.J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Benjamin S. Ohrenstein,* with him *William P. Thorn,* for appellant.

*Jerome E. Furman,* with him *Fuhrman and Furman,* for appellee.

OPINION BY RHODES, P.J., June 12, 1963:

This is an appeal by the wife-defendant from a decree of the court below dismissing exceptions to the master's report and granting the plaintiff-husband a decree in divorce on the ground of indignities. The case was vigorously contested at nine hearings before the master who recommended a decree in plaintiff's favor. The record consists of over 900 pages of testimony.

The parties were married on October 6, 1950, and thereafter lived with defendant's mother in Philadelphia. They later moved to 34 Primrose Lane, Levittown, Pennsylvania. Plaintiff was 25 years of age at the time of their marriage. He contends that defendant misrepresented her age as 25 when they were married; that six months later she told him she was five years older than he; and that in 1959 he discovered that she was eight years older. At the time of the first hearing before the master, in May, 1960, plaintiff was 34 and defendant 42. Two children were born of the marriage. Plaintiff is presently paying $45 weekly for their support under an order of the Court of Quarter Sessions of Bucks County. A previous marriage of defendant terminated in divorce.

By way of establishing indignities as a ground for divorce, plaintiff testified to defendant's calling him opprobrious names and insulting him both privately and publicly. In January and February, 1957, after her return from the hospital following the birth of their daughter, defendant started violent arguments, and called plaintiff a dope, moron, fool, and jackass in

front of private nurses in the household. Plaintiff's sister and family received similar name-calling. Plaintiff testified that defendant said to the children: "He's no good, he's not your father, he's a bum. Call him a bum. Tell him to get out of the house. Tell him he's no good."

In January, 1958, plaintiff's draw from his business was reduced from $200 per week to $120. Although plaintiff had given most of his salary to defendant, she constantly demanded more money, and told plaintiff to steal it from his business if necessary. Defendant often expressed the hope that plaintiff would be killed so she could collect the insurance. Defendant would frequently awaken plaintiff in the middle of the night, pull off the bedcovers, scratch him, and tell him to get out of bed and go to work. During an argument about money, in the spring of 1958, defendant picked up a knife and attempted, unsuccessfully, to stab plaintiff, stating: "I don't love you. I never loved you, and I am sorry I married you, . . . it was all a big mistake."

According to plaintiff, defendant called his place of business frequently and made derogatory remarks about her husband to his employes, referring to him as a "bum" and a "fool." Plaintiff was corroborated by two employes as to defendant's name-calling. Plaintiff also called three rebuttal witnesses who in general corroborated plaintiff's testimony, especially as to defendant's abusive name-calling of plaintiff. On one occasion defendant scratched plaintiff so severely that his bookkeeper offered him cosmetics to cover the marks. During the vacation period in the summer of 1958, defendant, in a rage, broke milk bottles on the kitchen floor. Plaintiff, in fear that the children would cut themselves, was forced to clear the broken glass. On a Sunday in December, 1958, defendant and the children met plaintiff at his office to go to dinner. While there defendant removed plaintiff's insurance policies and pri-

vate papers from his desk drawer. Plaintiff saw defendant put the papers in her handbag, and a scuffle ensued when she refused to return the papers. During the scuffle defendant threw a fifteen-pound power plane at plaintiff, which missed him and went through a plate glass window. A crowd gathered and the police arrived at the scene. Thereafter plaintiff moved to the home of his parents in West Philadelphia. Defendant admitted various details relating to the incident, including the throwing of an object through the window.

In September, 1959, defendant invited plaintiff back to their Levittown home. The second night she awoke him at midnight, used abusive language, ordered him out, and called the police, who warned plaintiff that he would be arrested if he struck his wife. After further fighting, plaintiff heeded defendant's admonition to leave. Defendant said her husband beat her on this occasion, and that she had a warrant issued for his arrest on a charge of assault and battery.

Defendant testified at length in her own behalf and denied many of plaintiff's allegations. In instances where defendant admitted to conduct as alleged by plaintiff, she asserted her actions were provoked by plaintiff. Much of defendant's testimony is equivocal, evasive, and contains substantial contradictions. Defendant called eight witnesses. They gave but little support to defendant's position. Some of these witnesses tended to paint a picture of marital bliss which the testimony of the parties themselves belied.

On the main issues the testimony was conflicting and could be resolved only by a determination of credibility. The master who saw and heard the witnesses resolved this issue of credibility in favor of plaintiff and his witnesses. The master's report, although only advisory, is to be given the fullest consideration, particularly on the issue of credibility. *Kramer v. Kramer,*

194 Pa. Superior Ct. 538, 543, 168 A. 2d 624; *Levitz v. Levitz,* 199 Pa. Superior Ct. 327, 333, 185 A. 2d 620. We agree with the court below that the master's findings of fact are substantiated by the evidence.

No general rule can be formulated as to what constitutes indignities in a particular case; such matters depend upon all the circumstances of the particular case and the position in life, character, and disposition of the parties. *Boyer v. Boyer,* 183 Pa. Superior Ct. 260, 270, 130 A. 2d 265. Indignities may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement. *McAnulty v. McAnulty,* 196 Pa. Superior Ct. 534, 537, 175 A. 2d 892. Plaintiff's evidence, if believed, clearly established a course of conduct on the part of defendant which manifested settled hate and estrangement and constituted indignities under the divorce law. Cf. *Holman v. Holman,* 145 Pa. Superior Ct. 555, 21 A. 2d 456.

We have not enumerated in detail the entire record, but we have related sufficient evidence to show defendant's course of conduct.

Plaintiff admitted the use of violent language and profanity on occasion. However, plaintiff's lapses may be regarded as justified by defendant's extreme conduct. The requirement that plaintiff must be the injured and innocent spouse does not mean that he must be completely blameless. *Henszey v. Henszey,* 195 Pa. Superior Ct. 377, 381, 171 A. 2d 837; *Rhinehart v. Rhinehart,* 197 Pa. Superior Ct. 558, 561, 180 A. 2d 82.

The decree of the court below is affirmed.