## Heikes *v.* Heikes, Appellant.

*Divorce—Desertion—Intent—Acquiescence of libellant.*

In an action of divorce on the ground of desertion the libel will be dismissed, where the intent to wilfully desert is rebutted by evidence that the separation was encouraged or acquiesced in by the libellant.

The rule is that the complaint must be fully sustained by testimony and if the record fails to disclose such weight of evidence the libel will be dismissed.

Argued October 6, 1926.    Appeal No. 32, October T., 1926, by respondent from the decree of C. P. Philadelphia County, March T., 1923, No. 3683, in the case of Chauncey I. Heikes v. Amelia M. Heikes.    Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.    Reversed.

Libel in divorce.    Before BARTLETT, P. J. and TAULANE, J.

The facts are stated in the opinion of the Superior Court.

The case was referred to John M. Scott, Esq., as Master, who recommended that a decree be granted. Subsequently respondent obtained a rehearing which was conducted by Norris S. Barratt, Jr., Esq., as substituted Master.    The substituted Master also recommended that the decree be granted.

On exceptions to the Master's report the court dismissed the exceptions and granted a divorce.    Respondent appealed.

*Errors assigned,* among others, was the decree of the court.

*J. B. Colahan,* and with him *Sheldon F. Potter,* for appellant.

*Everett A. Schofield,* and with him *Lemuel B. Schofield* and *D. Howard Conrade,* for appellee.

OPINION BY GAWTHROP, March 3, 1927:

The parties to this action were married October 5, 1918, at Easton, Md., where the respondent lived. The complainant's home was nearby. Soon after the marriage, they took up their residence on a farm owned by the complainant's father about eight miles from Easton. The complainant owned some personal property on the farm, consisting of chickens, ducks, turkeys, cows, horses and an automobile. A separation took place the latter part of April when, as alleged in the libel, the respondent wilfully and maliciously deserted the complainant. The material evidence presented was given by the complainant, a man employed on the place as a farmer, James Fields, and a domestic, Hester Blake, on behalf of the complainant, and by the respondent and her mother, Mrs. Nicholas. At the first hearing before the master, the respondent was not present in person or by counsel. She was residing at Easton, Md., and misunderstood the state of the proceedings. After hearing the testimony of the complainant on the merits and evidence as to the residence of complainant in Philadelphia, a report was made finding the complaint to be true and recommending a decree pursuant thereto. Before further action was had in the proceeding, the respondent applied to the court for leave to appear and give evidence in her defense. Leave was granted and the case referred to another master; Mr. Scott, the master first appointed, having resigned. At subsequent hearings additional evidence was presented by the complainant, and the respondent and her mother were heard for the respondent. The report of the master consisted of a recital of the facts found by Mr. Scott, the former master, and concludes that the finding of the fact of desertion in the first report "was not refuted in the light of any subsequent testimony." The opinion of the learned judge below accepts the

report of the master in the case after a careful reading of the testimony. There is no discussion of the evidence however, or reference to adjudicated cases which support the decree. That the parties separated the latter part of April, as stated in the libel, is not disputed. It is strongly contended however that if a wilful and malicious desertion occurred, it was the act of the complainant, and that on all the evidence in the case, the complainant consented to and acquiesced in the separation. After the parties were living on the farm for a few months, the complainant expressed dissatisfaction with his wife because she was not a good housekeeper; because she remained in bed late in the morning; and at times exhibited a quick temper. It may be fairly found from the evidence that the actual separation occurred on Thursday, the twenty-fourth day of April, 1919. On the morning of that day, the parties were in their room upstairs where they had a dispute which Mrs. Nicholas called a "scrap." The complainant came downstairs and told Mrs. Nicholas that his wife had struck him; he then said he was going away. Mrs. Nicholas testified that at the same conversation the complainant told her to take her daughter, that he was through with her, that the love he had for her was gone. With respect to the same occurrence his witness, Hester Blake, said: "He came through the kitchen in a great hurry, and I asked him what was the matter, and he said he could not tell me just then, and he went and washed his hands and then came back and said he was going away." Immediately thereafter he left and went to Easton. Before going he gave his address at a hotel in Easton to Fields, the farmer. He came back to the farm on Friday and Saturday, but did not return to the house, nor speak to his wife while there. The latter packed up her personal effects and left the farm about noon on Saturday, the farmer taking her goods with the

complainant's team to her parents' home in Easton. There is evidence showing this was done by direction of the complainant. After she left, the complainant returned to the house and remained there for some months. He had not communicated with her personally or by letter after that time. He saw her, but did not speak to her, nor did she speak to him. It was shown that a short time before the separation, the complainant had executed a bill of sale of all his personal property on the farm to his father, and the evidence supports the inference that this was done in contemplation of a giving up of the business he had been there carrying on. The testimony of the complainant with respect to this transfer lacks the frankness and fairness which would be expected if the transaction had been an open and bona fide one. It does not appear that his wife had any knowledge of it until about the time of the separation. Mr. Fields testified that he had a conversation with the complainant on Easter Sunday with reference to his going away at the time he did, in which he said that he felt justified in what he had done, to which the witness replied: "I don't know about that; how about the vow you have taken before the minister when you have married?" The complainant's reply was that he felt that he was justified. It may be conceded that the respondent was without experience in housekeeping. She had lived with her parents a large part of the time in hotels, and had had no training in domestic arts, but this the complainant knew. He says the respondent's father told him before he was married that his daughter did not like to work or would not work. Her unwillingness to rise at an early hour in the morning may have been annoying to him, and she may have exhibited temper at times, but this seems to have been an infirmity of the complainant also, if credit is to be given to the testimony of the respondent that he choked her on one occasion. The

evidence does not warrant the conclusion however that her dissatisfaction with him was strong enough to impel her to desert him. Both the respondent and her mother testified that the complainant told the latter to take her daughter away from the complainant's home and that his love for her was gone, and his own testimony gives support to their statements. Mrs. Nicholas talked to both of them and seems to have made a praiseworthy effort to induce them to live together, but she and her daughter testified that the complainant insisted that he couldn't get along with his wife. The learned master in making the second report said: "All the parties and witnesses appeared to be honest and straightforward in their testimony; and to arrive at a just conclusion for a recommendation, he has had considerable difficulty due to the large amount of testimony." The testimony of Mrs. Nicholas and the respondent, as well as the farmer and house servant called by the complainant, has the complexion of frankness and candor, and we find nothing in the case to cast discredit on their veracity. Allowing due weight to the testimony of the complainant, we are unable to avoid the impression that he left his home with the expectation that his wife would not remain on the farm after he had gone. His declaration that he was leaving because of the trouble he had with his wife and his prompt return after she had left furnishes support for such impression. But whether or not he went away with the intention of remaining until his wife left with her mother, a view of the whole evidence convinces us that his wife left with his consent and acquiescence. He certainly made no movement indicating a desire that she remain, nor did he exhibit the slightest interest in her thereafter. Neither by word nor letter did he express any disapprobation of her action in leaving, and his failure to make any effort to induce her to return colors the evidence intended to

show a wilful and malicious desertion. The reference by the master to the testimony of Mrs. Nicholas with respect to the first finding of fact of the former master should be read in connection with the context, from which it appears that the witness said that the respondent did not say she wouldn't live with him. On the contrary the witness testified that she always loved to live on the farm, and that complainant told his wife to get out, that he didn't want her there. Taking the testimony of the witness in its entirety, it wholly excludes the supposition that the respondent contemplated a desertion of her husband. It has been said again and again that separation is not on the part of either husband or wife wilful and malicious desertion; there must be an actual abandonment of matrimonial cohabitation with an intent to desert wilfully and maliciously. It was held in Graham v. Graham, 153 Pa. 450, that where the evidence showed that the wife gave her husband to understand that she did not care for his society and that he lived apart from her some five or six squares away this did not constitute wilful and malicious desertion on his part. The intent to desert is rebutted by evidence that the separation is encouraged or acquiesced in by the other party: Neagley v. Neagley, 59 Pa. Superior Ct. 565; Pomerantz v. Pomerantz, 71 Pa. Superior Ct. 241. When we consider the rule in cases of this class that the complaint must be fully sustained by testimony, we are unable to find such weight of evidence as enables us to declare that the respondent is guilty of the offense declared in the libel. The bond of matrimony in Pennsylvania is stronger than a gossamer thread. It can only be released when the court is satisfied from the evidence that it clearly convicts the respondent of an actionable breach of the marriage obligation.

The decree is reversed at the cost of the appellee.