Commonwealth ex rel. *v.* Wm. Goldstein, Appellant.

Argued March 14, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUN-NINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*William A. Gray,* and with him *Francis T. Anderson,* for appellant.

*Joseph P. Gaffney,* and with him *Victor H. Blanc,* for appellee.

OPINION BY CUNNINGHAM, J., May 4, 1932:

At the relation of Martha Goldstein, proceedings were instituted against her husband, William Goldstein, on June 9, 1931, in the municipal court of the County of Philadelphia, for an order requiring him to contribute toward her support and that of their three children. After a number of hearings before GABLE, J., a final order was entered November 4, 1931, directing the defendant to pay, for that purpose, $75 per week from October 14, 1931, and, under concurrent habeas corpus proceedings, relatrix was awarded custody of the children. Upon appeal to this court by the husband, the court below ordered that the same should operate as a supersedeas of one-half of the amount of the order upon the giving of a bond in the sum of $2,000. No opinion in support of his order was filed by the hearing judge, nor do we find any indication in the record as printed that notice was given him, as required by our Rule 58, of the taking of the appeal.

An attentive reading of the more than four hundred printed pages of testimony has not convinced us that the presiding judge erred in the manner in which he exercised the discretion vested in him. Having observed as well as heard the parties and their witnesses he was in a better position to pass upon their credibility and we find competent evidence in the record supporting the order.

The parties were married June 13, 1919, and separated June 6, 1931. They have three daughters: Rosalie, ten years of age; Jane, seven; and Evelyn, six.

For a number of years the family lived in a comfortable home at No. 5065 Wynnefield Avenue, Philadelphia; since the separation the wife and children have been living with her parents. We shall not discuss the testimony in detail. It is a sordid story of marital infelicity, resulting in frequent temporary separations, followed by reconciliations, and culminating in a midnight brawl between appellant, his wife and several male members of her family of such proportions as to justify interference by police officers; during this quarrel the oldest child fled from the home in her night dress and barefooted. There are direct and positive contradictions in the testimony relative to this occurrence and criminal prosecutions were instituted on both sides. For the purposes of this appeal it is sufficient to note that the relatrix, after having put the children to bed in the early evening and in the absence of appellant, left them in the care of the maid and went to her father's home nearby. Appellant came home and retired; upon his wife's return about 11:30 she was unable to gain admission. She returned to the home of her parents and finally succeeded in getting appellant to answer the telephone and informed him she was locked out. According to her story, corroborated by the oldest daughter, he replied, "You can go to hell—I will break your damned neck if you come over." Relatrix came back to her home accompanied by two of her brothers (appellant says by her father also) and the fight occurred between appellant and the members of her family during which a pitcher of ice water was broken over the head of one of her brothers, inflicting severe injuries, and appellant received several cuts and bruises. The weight of the testimony is that this fight occurred inside the house and not on the porch as testified to by relatrix. Since that night neither the wife nor any of the children returned to the family home, nor has appellant made any contribution to their support.

The position taken by his counsel is that appellant has kept their residence open, with the assistance of the maid, and is able and willing to there maintain his wife and children; that her leaving him was without legal justification and that he has requested her to return with the children to the home.

The first inquiry therefore is whether relatrix had reasonable cause for withdrawing from their habitation and, secondly, whether appellant's request for her return was bona fide. It is argued in behalf of appellant that the testimony does not show such conduct on his part as would furnish a valid ground for a decree against him in a proceeding for divorce. We think, upon consideration of the testimony as a whole, that relatrix was not without legal justification in leaving the family residence and taking the children with her. Both parties were seriously at fault and each has exaggerated and distorted minor incidents out of all proportion to their real significance; it is clear from the testimony that each, in the presence and hearing of their children, indulged in shocking profanity and made the grossest accusations against each other, and on several occasions appellant resorted to physical violence which destroyed the peace of the home and frightened the children. Frequently appellant humiliated and degraded his wife in various ways in the presence of her family and friends. Without any convincing evidence he repeatedly charged her with infidelity with a man whom he had introduced into the home and with whom he continued to maintain friendly relations.

Nor are we satisfied that his alleged request for the return of relatrix was made in good faith. There is no evidence of any effort upon his part prior to the hearings to persuade her to return; there was a formal statement at one of the hearings that he wanted her to come back on account of the children. This

testimony reads: "Q. Mr. Goldstein, as far as you know, was it any conduct on your part that caused your wife to leave the house and stay away? A. No, sir. Q. You are still living in the house where you both have lived for a long while? A. Yes, sir. Q. Are you willing that she should come back there with the children and live? A. Yes, sir. Q. Do you want them back? A. Yes, sir. Q. Notwithstanding the things that may have happened, that you say she was responsible for? A. No, sir. Q. I say, notwithstanding that? A. No, sir. Q. Well, what do you mean? A. I want her back because of the children. Q. In other words, you are willing to have her come back, and want her to come back, notwithstanding the things you say have happened which she has been responsible for? A. Yes, sir." But the testimony also shows that appellant has possession of his wife's wedding ring and although asked to give it to her when he produced it in court refused her request; in the course of his testimony he used these expressions: "I may break it up and throw it away ...... I don't want her to have it." When an offer of reconciliation is coupled with such declarations concerning the marriage token it is difficult to conclude it was made in good faith.

Further discussion of the testimony is unnecessary as we are of opinion that appellant is legally liable to support his wife until he shall have submitted satisfactory and convincing proof to the court below that she has been guilty of conduct entitling him to a divorce. In so far as the children are concerned, this record is barren of any evidence which would relieve him of his obligation to maintain them in the care of the person or persons to whom their custody may be awarded by the court having jurisdiction.

The appeal is dismissed and the order affirmed.