371 A.2d 964

**Ginette HELLMAN, Appellant,**

v.

**Albert HELLMAN.**

Superior Court of Pennsylvania.

Argued Dec. 10, 1976.

Decided March 31, 1977.

538

Sandor Engel, Allentown, with him Clayton T. Hyman, Allentown, for appellant.

Howard S. Epstein, Allentown, with him Morris Efron, Allentown, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

PRICE, Judge:

On June 5, 1972, the appellant-wife entered into a stipulated order with the appellee-husband by which the husband agreed to pay $140 per week for the support of his wife. On September 23, 1974, the husband petitioned the court below to reduce the amount of the support order, alleging reduced earnings. On January 23, 1975, the husband petitioned the lower court to terminate his support obligation, alleging, *inter alia,* that he could no longer be compelled to provide support for his wife because

she had engaged in adulterous conduct. After a consolidated hearing on both petitions, the lower court terminated the order of support after finding that the wife had committed adultery. This appeal followed.

■ By statute, a support order is not a final order. The Act of June 19, 1939, P.L. 440, No. 250, § 1 (17 P.S. § 263), provides that the court below may, at any time, modify or vacate an order of support, " . . . as the case may warrant." Thus, we have held on many occasions that the modification or termination of a support order is within the reasonable discretion of the court below based upon a consideration of all the relevant factors. *E. g., Commonwealth ex rel. Fryling v. Fryling*, 220 Pa.Super. 68, 283 A.2d 726 (1971); *Commonwealth ex rel. Kozlowski v. Kozlowski*, 176 Pa.Super. 24, 106 A. 2d 676 (1954). Unless there has been a clear abuse of discretion, we will not interfere with the determination of the lower court in a support proceeding. *E. g., Commonwealth ex rel. McCuff v. McCuff*, 196 Pa.Super. 320, 175 A.2d 124 (1961).

In the case at bar, the lower court refused to admit evidence of the husband's infidelity, declaring that a husband's misconduct is not relevant to a determination of a wife's right to support. The appellee, joined by the dissent, would have us affirm the action of the lower court and adopt the inexorable rule that (1) the lower court may not consider a husband's misconduct in a proceeding to vacate a wife's support on the basis of her alleged adultery and that (2) if proven, a wife's adultery, unless condoned or encouraged by her husband, will deprive her of his support. After careful consideration, we conclude that such a holding would incorrectly restrict the lower court's range of review and might, therefore, in certain situations, induce an inequitable decision.

In support of their position, both the appellee and the dissent rely heavily upon our opinion in *Commonwealth*

*(ex rel., Appellant) v. Crabb,* 119 Pa.Super. 209, 180 A. 902 (1935), where we stated:

> "Undoubtedly, the original order of support, upon proof of the infidelity of the husband, was fully warranted, but the misconduct of the husband did not justify the wife to conduct herself in such a manner as made her unworthy of the support of her husband. The order of support is predicated not only upon the fact that she is worthy at the time of entry, but that she continues to be worthy during its pendency. As well stated in the court's opinion: 'We are at a loss to understand why or how the effect of the husband's adulterous relations can be construed to allow or import leave, license or excuse to the wife to subsequently enter into similar relations.' " *Id.* at 211, 180 A. at 903; *see also Commonwealth ex rel. Brobst v. Brobst,* 173 Pa.Super. 171, 96 A.2d 194 (1953).

Despite this language, however, our *holding* in *Crabb* was limited solely to the proposition that the lower court has the power to terminate support payments to an adulterous wife even though her husband was similarly culpable. Specifically, we declared that:

> "We are not to be understood as holding that where both parties have been guilty of misconduct, that the misconduct of the wife shall be an absolute bar to support proceedings; nor is the court called upon to balance against each other their mutual misdeeds, but where, as in the present proceedings, the court in its reasonable discretion denied support, we shall not disturb the order." *Id.,* 119 Pa.Super. at 212, 180 A. at 903–04.

This language does not provide support for the proposition that the lower court may properly refuse to consider evidence of a husband's misconduct in a proceeding to terminate a wife's support. The lower court in *Crabb* allowed before it evidence of the husband's infidelity. Here, the lower court declined to accept such evidence.

The question before us in *Crabb* was whether a lower court may vacate a wife's support award where both parties are guilty of adultery. Here, we must determine whether evidence of a husband's misconduct is relevant in a proceeding to vacate a wife's support. This question was not answered by our holding in *Crabb*.

The restricted nature of our holding in *Crabb* has been recognized on several occasions. In *Brobst v. Brobst*, 173 Pa.Super. 171, 174, 96 A.2d 194, 195 (1953), we stated that "[t]he fact that a husband's own conduct may preclude a divorce from a wife who has committed adultery *does not necessarily* preserve the legal duty to support her." (emphasis added) We further held in *Brobst* that where both parties are guilty of adultery, the court below did not abuse its discretion by vacating the payment of support to the wife *"under the circumstances."* (emphasis added) *Id.* at 174, 96 A.2d at 195. The language in *Brobst* was quoted with approval in *Commonwealth ex rel. Young v. Young*, 213 Pa.Super. 515, 247 A.2d 659 (1968) and *Commonwealth ex rel. Levitz v. Levitz*, 189 Pa.Super. 438, 150 A.2d 581 (1959). Similarly, in *Commonwealth ex rel. McCuff v. McCuff*, *supra*, we stated that "[i]t is of course true, as appellant argues, that an order of support *may* be refused, or vacated, where the wife is guilty of infidelity, notwithstanding the fact that the husband is likewise guilty of misconduct which precludes him from obtaining a divorce." (emphasis added) *Id.* 196 Pa.Super. at 322, 175 A.2d at 125.

Several conclusions may be drawn from these cases. In two cases, *Crabb* and *Brobst*, this court has implied in *dicta* that it does not consider a husband's adultery to be relevant to a determination of a wife's right to support. Notwithstanding this language, however, this court has never instructed the court below to refuse to consider such evidence in its review of a particular case. To the contrary, this court had implied in all

of its *holdings*, particularly in *Brobst*, that such evidence is properly within the lower court's scope of review. Thus, at present, inexcusable disparity of direction exists between comment and conclusion in our writings dealing with the instant problem. We do not subscribe to the *dicta* found in *Crabb* and *Brobst* and disaffirm such language.

■ As previously stated, the termination of an order of support rests within the discretion of the court below and depends upon the equities of the case. The Act of May 23, 1970, P.L. 227, § 1 (48 P.S. § 131, *as amended;* The Act of June 19, 1939, P.L. 440, No. 250, § 1 (17 P.S. § 263). By urging us to direct the court below that a wife's right to support is automatically defeasible upon proof of her adultery, the appellee and the dissent would have us ignore legislative mandate. The appellee exhorts that no matter how nefarious, the conduct of the husband is of no moment except to show condonation or connivance. Normally, in support cases, we are loath to substitute our judgment for that of the court below which has an opportunity to observe the demeanor of witnesses as they present evidence. Thus, on appeal, we will not disturb an order of support unless there is a clear abuse of discretion by the court below in fixing the amount of the award or unless the order is based upon a misinterpretation of the law. *E. g., Commonwealth ex rel. Collins v. Collins*, 232 Pa.Super. 105, 331 A.2d 675 (1974). We are unable to conclude from the record that the equities of the present case are so clear that the lower court had no recourse but to vacate the payment of support to a wife once it determined that the charged transgression was true.

■ The appellee, citing *Crabb*, explains that a wife may receive support from her husband unless she conducts herself in a manner unworthy of his support. Once the wife behaves in such a manner, no similar conduct of the husband will work to excuse the wife's action.

Thus, although the husband has acted in disparagement of the marital status, he is relieved of his obligation to support his wife. We agree with the appellee that an act of adultery on the part of the husband does not give a wife, unrestrained by morality or personal dignity, a right to act forever in a licentious manner and still command support from her husband. Support laws, however, were not promulgated for the purpose of rewarding a wife's good behavior. An order of support seeks to secure a reasonable allowance for the maintenance of the wife so that she may not become a charge of the state. *Commonwealth ex rel. Bassion v. Bassion,* 199 Pa.Super. 541, 185 A.2d 822 (1974). Thus, although it is true that the only cause which will justify a husband's refusal to support his wife is conduct on her part, such as adultery, which would be a valid ground for divorce, *Commonwealth ex rel. Herman v. Herman,* 95 Pa.Super. 510 (1929), we must not focus our attention solely upon the wife's conduct in reviewing her right to support. We must look at all the circumstances present in each case. If we were to mechanically apply the appellee's inflexible rule, if we did not view each case in its entirety, then certainly we would eventually occasion an inequitable termination of support.

For example, we agree with Chief Justice Cullen of the New York State Court of Appeals that ". . . a single act of adultery [on the part of the wife], possibly committed at a time long past, and sincerely repented of, should not enable the husband to cast her off without support, though he may be living a life of continuous and [open] profligacy." *Hawkins v. Hawkins,* 193 N.Y. 409, 422, 86 N.E. 468, 473 (1908) (Cullen, C. J., Dissenting Opinion).[1] This would be especially true if the wife

1. In the majority opinion it was stated that "[i]t is also to be borne in mind that this is not a case where the husband has been continuing and living in profligacy while he cast his wife off for a single offense." *Hawkins v. Hawkins,* 193 N.Y. 409, 412, 86 N. E. 468, 470 (1908). Thus, although the court in *Hawkins* ruled

should also be indigent absent the support of her husband. Although this particular situation may rarely arise, the mere possibility of its occurrence should provide sufficient reason to avoid restricting the discretion of the lower court.

■ We hold that the lower court abused its discretion by refusing to consider evidence of the husband's misconduct. If we were to affirm the action of the lower court, we would be disregarding direct legislative mandate and elevating misconsidered *dicta* to the status of binding precedent. We therefore remand this case to the court below [2] for a hearing consistent with this opinion.

The appellee and the dissent also contend that the appellee-husband was not guilty of connivance. Here, the wife testified that for two years before their separation and for two and one half afterwards her husband had repeatedly implored her to "[p]lease find somebody so I won't have to pay you support." (N.T. 75) By itself, we agree that the record does not reveal that the husband had connived at her adultery. However, in this situation, we find further support for the proposition that the lower court must review evidence of a husband's misconduct in a proceeding to terminate a wife's support.

■■ Connivance is often very difficult to establish. It is most easily ascertained where a husband actively introduces his wife into lewd company or lays temptation in her way for the purpose of procuring her adultery.

that despite a husband's adultery, a wife loses her right to support if she commits adultery, it is evident that the court was limiting its decision to the particular case before it. Thus, *Hawkins* may not be used for the proposition that a husband's conduct is never relevant to a determination of a wife's right to support.

2. We do not advocate that the court below " . . . balance against each other [the parties'] mutual misdeeds." *Commonwealth (ex rel., Appellant) v. Crabb*, 119 Pa.Super. 209, 212, 180 A. 902, 904 (1935). In fact, we strongly resist such action. We hold merely that the court below must consider a husband's misconduct before it may properly exercise its discretion.

*E. g., Teresi v. Teresi,* 109 Pa.Super. 513, 167 A. 235 (1933); *Clawell v. Clawell,* 63 Pa.Super. 88 (1916). On the other hand, it is very difficult to perceive when a husband employs more subtle means to induce his wife to commit adultery. However, in both instances, the husband is equally culpable. In determining the validity of the defense of connivance, we must be convinced that the husband invited, not merely permitted, his wife's adultery. This can only be done if we are able to review all of the husband's conduct. Certainly, the persistent, and perhaps cruel, statements of the husband predisposed the appellant to associate with another man.[3] We must now determine whether the husband did more than merely encourage the appellant to date other men. Did he scheme to provoke her adultery? Is is not possible that a cunning husband may successfully induce his long resistant and loving wife to commit adultery by highlighting his continual suggestion that she see others with the flaunted reality of his own adultery? I believe so. The husband's actions are highly significant in determining his intent. The lower court should have before it all of the evidence of the husband's misconduct when it reviews the charge of connivance. Here, at the very least, the record, as presented, puts into question the husband's motives in seeking to terminate the payment of support to his wife. Certainly, he does not object to her conduct because he is morally outraged. The existing support award is predicated upon a previous violation of the marital status by him. He seeks merely to escape the financial burden of supporting her. We believe that the record is incomplete and that we are unable to review properly the allegation of connivance. We therefore remand this case to the court below for a hearing to deter-

3. The court below found that the appellant had committed adultery with one Jerry Filiatraupeau, a Canadian citizen, on several occasions in late 1974, over two years after the parties herein had separated.

mine the extent and circumstances of the husband's alleged adultery.

The record is remanded to the court below with a *procedendo*.

SPAETH, J., files a dissenting opinion in which CERCONE, J., joins.

SPAETH, Judge, dissenting:

This is certainly one of the most difficult cases we have had. On the one hand, the pertinent principles of law are both long-settled and clearly stated. On the other hand, having worked through the evolution of those principles, and having applied them to the facts of the case, one is left with a profound and abiding sense of dissatisfaction. The reason why this is so is that the principles, settled as they may be, are unjust.

A judge confronted with the task of applying principles of law that after the most conscientious reflection appear unjust will naturally become restive. This feeling, however, does not warrant the judge in changing the principles, or (what amounts to the same thing) in refusing to abide by them. If the principles are of judicial origin, change may be warranted, although consideration will have to be given to the values associated with the doctrine of *stare decisis*. *See Commonwealth ex rel. Gonzalez v. Andreas*, 245 Pa.Super. 307, 369 A.2d 416 (1976) (concurring opinion). If, however, the principles are embedded in a statute, unless they are unconstitutional the judge must apply them. In such an event, he may, and in my opinion he should, protest with vigor, in the hope that the legislature will be persuaded to change the statute.

Here, the majority has followed neither of these courses of action. Instead, its restiveness, which I share, has led it to misstate the law, with a doubly unfortunate result. By stating that the law is other than it really is the majority has both blunted the possibility of legisla-

tive reform and has formulated a rule that the lower courts will be unable to apply.

In the case at hand the husband's petition to terminate his obligation to support his wife was filed pursuant to the Pennsylvania Civil Procedural Support Law.[1] The lower court granted the petition because it found that the wife had committed adultery. On this appeal the wife contends that the lower court abused its discretion because it refused to admit testimony that the husband had also committed adultery.

As I believe the ensuing discussion will show, the lower court merely excluded irrelevant testimony. I would therefore affirm. However, I wish also to note the injustice of the principles of law that the lower court applied in reaching its decision.

## I

In what follows I shall undertake to summarize the pertinent principles of law.

## A

The purpose of support is to provide a dependent spouse with a reasonable living allowance. *Commonwealth ex rel. Bishop v. Bishop*, 234 Pa.Super. 600, 341 A.2d 153 (1975); *Commonwealth ex rel. Bassion v. Bassion*, 199 Pa.Super. 541, 185 A.2d 822 (1974). The obligation to provide support is imposed as an incident of the marital relationship, which is conceived as a unity. *Commonwealth ex rel. Roviello v. Roviello*, 229 Pa.Super. 428, 323 A.2d 766 (1974); *Commonwealth ex rel. Lebowitz v. Lebowitz*, 227 Pa.Super. 593, 307 A.2d 442 (1973); *Commonwealth v. Berfield,* 160 Pa.Super. 438, 51 A.2d 523 (1974). When that unity is severed, the obligations incident to it cease. When a husband and wife are divorced, therefore, the husband's obligation to support his wife

---

1. Act of July 13, 1953, P.L. 431, § 1, 62 P.S. 2043.31 *et seq.*

ceases; when a husband and wife separate only, the marital unity is not severed, and the husband's obligation to support his wife therefore continues to exist.[2] It follows that if a husband establishes, before or apart from an action for divorce itself, that he has grounds for divorce—that his wife has conducted herself in a manner contrary to her marital obligations—the result is to establish that the marital unity has been severed, and that his obligation to support his wife has therefore ceased. Specifically, if a wife commits adultery, her husband does not have to support her; she may demand support as an incident of the marital unity only if her behavior is consistent with that unity.

## B

Given these principles, what should be the effect, if any, of a husband's own adultery when on the basis of his wife's adultery he seeks to terminate his obligation to provide her support? *Commonwealth (ex rel., Appellant) v. Crabb*, 119 Pa.Super. 209, 180 A. 902 (1935), gives us the answer to this question.

In *Crabb* this court quoted with approval the opinion of the lower court, which stated: "We are at a loss to understand why or how the effect of the husband's adulterous relations can be construed to allow or import leave, license or excuse to the wife to subsequently enter into similar relations." *Id.* at 211, 180 A. at 903. The court explained that when a wife demands support, it is her conduct that must be examined; it is she who must

2. For the sake of clarity the examples used are consistent with the case at hand, and refer to the party entitled to support as the wife, and the party obliged to provide support as the husband. It must be noted, however, that the Penna. Civil Procedural Support Law provides that "[t]he masculine pronoun when used in this act shall be construed to include the female." 62 P.S. 2043.32. This construction would in any case be required by the Equal Rights Amendment to the Pennsylvania Constitution, Pa.Const., art. I, section 28 (adopted May 28, 1971), discussed *infra*. Therefore the obligation to provide support falls upon the income-producing spouse regardless of sex.

not only be "worthy at the time of its [the order of support's] entry, but that she [must continue] to be worthy during its pendency." *Id.* If the wife's conduct provides grounds for divorce, she is "unworthy" of support. What is critical, in other words, is not the husband's ability to obtain a divorce, but the presence of grounds, *i. e.*, the quality of the wife's conduct.

When a husband sues for divorce on the ground of his wife's adultery, he will be successful only if he is an innocent and injured party. If the wife admits her own adultery but asserts that her husband has committed adultery as well, her defense to the action will be that of recrimination. Recrimination does not lessen the wife's culpability, or excuse her conduct; it does, however, serve to bar a divorce since the moving party is not considered innocent and injured. *Berezin v. Berezin,* 186 Pa.Super. 340, 142 A.2d 741 (1958) ; *Rech v. Rech,* 176 Pa.Super. 401, 107 A.2d 601 (1954); *Commonwealth ex rel. Brobst v. Brobst,* 173 Pa.Super. 171, 96 A.2d 194 (1953). When the wife seeks support, support will be denied if it appears that she has committed adultery. *Commonwealth ex rel. Young v. Young,* 213 Pa.Super. 515, 247 A.2d 659 (1968) (*allocatur refused*); *Commonwealth ex rel. Roviello v. Roviello, supra; Commonwealth ex rel. Goldstein v. Goldstein,* 105 Pa.Super. 194, 160 A. 158 (1932). If a wife proves that her husband has also committed adultery, she has made out the defense of recrimination, which would bar a divorce on the ground of adultery, but she has not altered the quality of her own conduct. Therefore, she does not get support. *Commonwealth ex rel. Young v. Young, supra; Commonwealth ex rel. Brobst v. Brobst, supra.*

## C

The principle that a wife who committs adultery loses her right to support is not an isolated principle but is rather consistent with other principles that have evolved

with respect to the defenses of condonation and connivance.

Condonation is the voluntary abandonment of the right to divorce based on adultery by renewal of the marital relationship after knowledge of the adultery. *Commonwealth v. Sanders*, 187 Pa.Super. 494, 144 A.2d 749 (1958); *Teresi v. Teresi*, 109 Pa.Super. 513, 167 A. 235 (1933); *Clawell v. Clawell*, 63 Pa.Super. 88 (1916), *allocatur refused*. Thus a husband "condones" his wife's conduct when he has sexual intercourse with her, believing that she has committed adultery. When a wife proves condonation, not only will her husband be denied a divorce—because he may not complain of that which he had previously accepted—but the wife will be deemed restored to her prior "blameless" condition. *Commonwealth ex rel. Young, v. Young, supra*, 213 Pa.Super. at 518, n. 1, 247 A.2d at 661 n. 1. Her misconduct, as it were, no longer exists. Therefore, in a proceeding to terminate support, if a wife proves that her husband condoned her adultery, she proves that she is "blameless" and therefore "worthy" of support. The husband can neither obtain a divorce, nor deny support.

Connivance is the corrupt consent to a spouse's adultery. It occurs when a husband prostitutes his wife, introduces her to lascivious company, or otherwise lures her into misconduct. *See Murphy v. Murphy*, 204 Pa.Super. 576, 205 A.2d 647 (1964); *Wotherspoon v. Wotherspoon*, 108 Pa.Super. 309, 164 A. 842 (1933), *allocatur refused; Heikes v. Heikes*, 90 Pa.Super. 312 (1926), *allocatur refused*. If a husband is found to have "connived" at his wife's misconduct, again he will not be able to complain about it later, and she will be deemed blameless. His action for divorce will be denied, and he will still be obliged to provide support.

## D

From this examination of the cases it is apparent that the following principles of law are settled. In both a

proceeding for support and an action for divorce the critical inquiry is directed to the conduct of the party seeking relief. The husband's conduct will therefore be relevant only to the extent that it affects the quality of his wife's conduct. Adultery that merely proves recrimination can have no effect on the quality of the wife's conduct; it will therefore be irrelevant in a proceeding in which a husband seeks termination of his obligation to provide support. When condonation is alleged, a husband's conduct in resuming intercourse with his wife will be relevant—it renders her "blameless"—but his adultery will not be relevant. Where connivance is alleged, a husband's adultery will be relevant only if it constituted conduct that induced or otherwise lured his wife into her misconduct.

## II

I shall now undertake to explain why in my opinion the majority has misstated the law, and has formulated a rule that the lower courts will be unable to apply.

## A

The majority recognizes that in *Commonwealth (ex rel., Appellant) v. Crabb, supra,* this court terminated the wife's support because of her adultery, despite the finding that the husband had also committed adultery. The majority states that this holding does not mean that evidence of a husband's misconduct is never admissible. This is true, to the extent, however, and only to the extent, that the husband's misconduct directly relates to the wife's. The majority claims that evidence of the husband's adultery is relevant in other instances, and in support of its position quotes the following from *Crabb*: "We are not to be understood as holding that where both parties have been guilty of misconduct, . . . the misconduct of the wife shall be an absolute bar to support proceedings . . .." *Id.,* 119 Pa.Super. at 212,

180 A. at 903–4. This language in no way supports the majority's position; it is simply consistent with the principles of law that have been summarized above: the wife's misconduct is not an "absolute bar" in those two situations where the husband's conduct may dissipate the effect of her own conduct, *i. e.*, condonation and connivance.

The majority, unsatisfied with this rule, cites various cases, but they are not in point. In *Commonwealth ex rel. Levitz v. Levitz*, 189 Pa.Super. 438, 150 A.2d 581 (1959), and *Commonwealth ex rel. Brobst v. Brobst, supra*, support was denied because both parties were found to have committed adultery. In *Commonwealth ex rel. McCuff v. McCuff*, 196 Pa.Super. 320, 175 A.2d 124 (1961), where a husband was found to have committed adultery, support was continued because the evidence was insufficient to establish the wife's adultery. In *Commonwealth ex rel. Young v. Young, supra*, where support was also denied because both parties were found to have committed adultery, footnote one explains the difference between recrimination, which has no effect on the wife's adultery, and condonation, which restores her to a "blameless" condition. *Id.*, 213 Pa.Super. at 519 n. 1, 247 A.2d at 661 n. 1. The effect of this distinction was manifest in *Commonwealth v. Sanders*, 187 Pa.Super. 494, 144 A.2d 749 (1958), where the husband had condoned his wife's adultery and was therefore not permitted to raise it as a defense to her proceeding for support. In short, contrary to the majority, the cases are not inconsistent with but instead support *Crabb*, reiterating and illustrating the particular circumstances in which a husband's adultery will be relevant.

## B

The majority would require the lower courts to admit evidence of the husband's adultery in circumstances additional to those recognized by the cases. However, the

majority does not explain what additional circumstances it means; it only says that "we must determine whether evidence of a husband's misconduct is relevant in a proceeding to vacate a wife's support." Majority Opinion at 966. If not relevant to condonation or connivance, however, relevant to what? The conclusion seems inescapable that to admit evidence of the husband's adultery, even when it had no effect on the wife's conduct, could only result in—be relevant to—a juxtaposition of the two blameworthy parties to see who was more at fault, so that if the husband's fault were the greater, support would continue, while if the wife's were the greater, she would be required to provide for herself. This balancing of equities, however, is precisely what the majority claims it does not advocate. Opinion at 970, f.`n. 2. In addition, the majority recognizes that such balancing is prohibited by *Commonwealth (ex rel., Appellant) v. Crabb, supra*: ". . . nor is the court called to balance against each other their mutual misdeeds . . ." *Id.*, 119 Pa.Super. at 212, 180 A. at 903–04.

In these circumstances I can only confess that I do not understand the majority opinion. It seems to contemplate evidence of the husband's adultery that is not relevant either to deciding whether the husband's conduct affected his wife's or to deciding which party is the more blameworthy. If there is such evidence, I am at a loss to divine what its purpose would be, and I suggest that the lower courts will be equally at a loss.

The majority compounds the confusion it has created by quoting with approval the dissenting opinion of *Hawkins v. Hawkins*, 193 N.Y. 409, 86 N.E. 468 (1908), as though it were consistent with *Crabb*. However, in *Crabb* this court cited and followed the majority in *Hawkins*, not the dissent. In *Hawkins*, the majority opinion, after concluding that despite the husband's adultery the wife's own adultery precluded her recovery, states:

Of course, if the appellant were seeking affirmative relief, his conduct would be important and subject to the strictest scrutiny, and no other rule should be applied to him than is being urged against the respondent. But he is not. The respondent alone is seeking legal relief and in my opinion the only material question relates to her act.

*Hawkins v. Hawkins, supra* at 412, 86 N.E. at 470. It is therefore quite misleading for the majority here to say that "the court [in *Hawkins*] was limiting its decision to the particular [facts] before it." Majority Opinion at 543, f. n. 1. To the contrary: In *Hawkins*, as in *Crabb*, the court enunciated a general rule—that the inquiry should focus only on the conduct of the party seeking relief.

Finally, the majority refers to inequities that may result if evidence of the husband's adultery is held irrelevant. I entirely agree and shall have more to say about that in the last part of this opinion. What the majority ignores, however, is that under present Pennsylvania law the obligation to provide support does not derive from considerations of equity but rather, as has been discussed, from the premise that it is an incident of marital relationship, which is defined as a unity severable by misconduct. Given that premise, no injustice is created by requiring that a wife who wants her husband to pay for her living expenses, only because of her status as a wife, and not because she and her husband live together or she provides services within the home, must act as a wife.

### III

As the appellant, Mrs. Hellman contends that the lower court erred in two respects: in refusing to receive the evidence of the adultery of her husband, Dr. Hellman, who is the appellee; and in not finding that she had made out the defense of connivance. An examination of

these contentions will serve to demonstrate how the principles described above are to be applied.

### A

Appellant admitted that a male friend, whom she had met on an airplane, spent several days at her home on two separate occasions—in August 1974, and on the weekend before Thanksgiving in November 1974. It was on the basis of this evidence that the lower court granted appellee's petition to terminate his obligation to support appellant. Appellant does not contend that the lower court erred in finding that she had committed adultery. Rather, as just noted, she contends that the lower court erred in refusing to receive evidence of the adultery of appellee. Testimony was introduced that on the weekend before Thanksgiving in November 1974, a dance held at the local club was attended by appellant accompanied by her male friend, and by appellee accompanied by a Mrs. Sloan. Appellant attempted to introduce evidence of a trip by appellee and Mrs. Sloan to Puerto Rico, extending from November 26 to December 2, 1974 (immediately following the weekend of the dance). The lower court received this evidence, but only for the purpose of proving appellee's expenses as they related to his ability to provide support; the court refused to receive the evidence for the purpose of showing that appellee had committed adultery with Mrs. Sloan. (N.T. 39–42)

It may be assumed that the evidence would have supported a finding that appellee had committed adultery. The adultery, however, could have no relevance to the defense of condonation, since there is no allegation of marital reunion. Nor could the adultery have any relevance to the defense of connivance, since the evidence tended to show that it had occurred *after* appellant's adultery; consequently, appellee's adultery could not have constituted conduct that induced or otherwise lured appellant into her adultery. The only possible relevance of the evi-

dence could be to a demonstration that appellee—was also guilty of misconduct, which should be balanced against and thereby reduce the blame attached to appellant because of her misconduct. This balancing, however, is precisely what the law forbids (and also, as has been discussed, precisely what the majority claims it does not want to do). It thus is apparent that the evidence of appellee's adultery had no relevance, and was therefore properly not received. This left the lower court with evidence of appellant's adultery alone. Under the cases, which have been discussed, when appellant committed adultery, the unity of her marital relationship with appellee was severed, and with that severance, appellee's obligation to support appellant ceased. There is no authority to the effect that appellee's later adultery somehow revived his obligation to support appellant.

## B

Appellant also introduced evidence of appellee's conduct prior to her adultery. Although she apparently did not argue the point below, she now contends that this evidence made out the defense of connivance..

Appellant testified as follows:

Q: Did you and the doctor ever have any discussion about your dating?

A: [Mrs. Hellman] Oh, yes, sir.

Q: Can you tell us when that first occurred?

A: A long time ago. Two years before we separated.

Q: Two years before you separated?

A: Yes, sir.

Q: What was the occasion for that discussion?

A: We were in Spain, and the marriage was not going well, and my husband then at that time said, "I cannot afford a divorce. I will wait till you find somebody."

Q: And after you separated did you and he ever have any discussions about your dating?

A: Yes, sir.

Q: And can you tell us when that first occurred after your separation?

A: Right away, within the next couple weeks.

Q: And what was the nature of the discussion?

A: "Please find somebody so I won't have to pay you support." And it went on and on and on for the past two-and-a-half years.

(N.T. 74–75)

Appellee did not contradict this testimony:

Q: Did you and your wife ever have any discussions after her separation where you asked her or told her or inquired of her if she would go out on dates to find some man to get married to?

A: [Dr. Hellman] If I asked her to go out and find dates?

Q: Yes.

A: It may have come up in discussion. I don't recall.

Q: When you say you don't recall, you know you've had the discussion but you don't remember what the terms of it were?

A: I'm not sure that we have that type of discussion. I may have had it. I don't recall.

Q: Did you ever have a discussion with her where you told her if she would get married that you would be off the hook in regard to your support payments?

A: I possibly said that.

Q: And in the context of that conversation did you ever ask her how she was doing, was she going out, or that you wished that she would go out more often?

A: I may have said that. I'm not sure.

Q: And during this period of time on different occasions have you been at joint affairs with Mrs. Hellman?

A: Joint affairs, yes, the Thanksgiving dance.

Q: All right. And you were aware of the fact that she had a date that evening, weren't you?

A: Yes.

Q: Did you and she have any discussion about it?

A: No.

Q: Did you ever ask her anything about Jerry?

A: No.

(N.T. 48–49)

Generally stated, the testimony reveals that when appellant and appellee separated, appellee wanted to terminate his obligation to support appellant, and encouraged her to date. In the words of appellant's counsel, appellee "told her that if she would get married that [he] would be off the hook in regard to [her] support payments." (N.T. 49)

The foregoing was insufficient to make out the defense of connivance. As already discussed, in the first part of this opinion, connivance consists of two factors: behavior by the husband that induces the wife's adultery; and corrupt consent—the husband's intention to induce the adultery. Thus, connivance occurs when a husband "procures" his wife's adultery, *Wotherspoon v. Wotherspoon, supra,* or "intentionally lays a lure for his wife," *Fisher v. Fisher,* 74 Pa.Super. 538 (1920), or introduces her into "lewd company," *Clawell v. Clawell,* 63 Pa.Super. 88 (1916). I agree with the majority that a husband's behavior may well represent a subtle, as distinguished from a crude, inducement, and that all of his conduct may be relevant to show connivance. Whether particular behavior can be deemed an inducement is a question of fact, best decided by the judge who heard the testimony. However, one spouse may not disclaim re-

sponsibility for his or her conduct merely because the other spouse did not necessarily disapprove. The question is not whether a husband allowed his wife to do that which she did, but whether he induced her action, and corruptly consented to it. Appellee's statements (as quoted by appellant), "I will wait till you find somebody," "Please find somebody so I won't have to pay you support," hardly amounted to an inducement to appellant to commit adultery. Instead, as argued by her counsel, they "told her that if she would get married . . . [he] would be off the hook in regard to [her] support payments."

As I understand its opinion, the majority agrees that the evidence was insufficient to make out connivance. The majority would, however, remand for additional testimony regarding appellee's conduct. I might agree to such a remand, if there had been an offer of relevant additional testimony that might conceivably have changed the result. However, the only other testimony offered related to the trip to Puerto Rico, which occurred after appellant's adultery.

IV

After making the argument that the majority has accepted, appellant alternatively argues that the lower court's refusal to receive evidence of appellee's adultery represented a violation of the Equal Rights Amendment to the Pennsylvania Constitution.[3]

As already noted, footnote 2 *supra,* the Pennsylvania Civil Procedural Support law provides that the masculine pronoun shall be construed to include the female. Therefore, the principles of law that have been discussed, and in accordance with which the lower court acted, are sex neutral: they apply in precisely the same manner re-

---

3. "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual." Pa.Constitution, P.S., Art. I, Sect. 28 (adopted May 18, 1971).

gardless of the sex of the party seeking relief. Suppose a husband proved, as he might be able to do, that his wife was obliged to support him. His wife could have her obligation terminated because of his adultery. In such a termination proceeding, evidence of the wife's adultery would be irrelevant, unless it tended to show that she had connived at her husband's adultery. In other words, the law does not compare the two acts—the husband's adultery and the wife's—and make evidence of one admissible and evidence of the other inadmissible according to the sex of the actor; the law merely provides that the party seeking relief must be without fault.

## V

At the beginning of this opinion I stated that the principles of law that we must apply in deciding the present case are unjust, and should therefore be changed. In what follows I shall undertake to illustrate the nature of the injustice, and to explain why change must not come from the courts but from the legislature.

## A

It is an old observation that to accomplish justice, principles of law must not be too rigid. "Law is always a general statement, yet there are cases which it is not possible to cover in a general statement." [4] It was in order to decide such cases that the distinctive doctrines of equity were developed. "Equity" may be defined as "a rectification of law where law is defective because of its generality." [5] "[T]he Roman praetor permitted new actions and defenses in instances where the ancient *ius civile* was found defective because of its rigidity and narrowness . . .." [6] Similarly, the early Chancellors

4. Aristotle, The Nicomachean Ethics, Bk. V.

5. *Id.*

6. E. Bodenheimer, Jurisprudence 250 (1974).

developed remedies conceived as a correction of the inflexible system of the common law.[7]

The principles of law with which we are concerned here make no provisions for considerations of equity; indeed, as has been discussed, to balance the equities of the respective parties' positions is expressly forbidden.[8] As a result, injustice is inevitable.

I am not persauded that injustice has occurred so far as appellant is concerned. Her marriage to appellee was her second marriage, and her affair, after she and appellee had separated, was conducted openly; I suspect she knew the risk she ran of losing her husband's support. In addition, she has worked before, and there is no evidence that she cannot support herself. However, one may readily suppose another case in which the same principles of law would indeed produce a result that would generally be seen as manifestly unfair. Suppose, for example, that the wife is middle-aged, and has no ability to support herself, not simply because of her age but because she has no marketable skills, this being the case because she has spent most of her adult life taking care of her husband, and raising their children. Suppose further that the couple separates, and that the wife has a single discreet affair. To say, as the law now does say, that thereupon she loses all right to support, even if her husband has been openly having one affair after another, seems manifestly unfair. It is all very well to cite occasional laws and court decisions to the effect that women should be treated on the same basis as men; the fact remains that more often than not they are not treated equally. *See generally* K. Davidson, R. Ginsburg and H. Kay, Sex-Based Discrimination (1974). Given the economic structure of our society and its social attitudes,

7. *Id.* at 11, n. 11; 249–51.

8. "It is well settled in Pennsylvania that equity has no general jurisdiction over marriage and divorce." A. Freedman & M. Freedman, Law of Marriage and Divorce in Pennsylvania § 108 at 261 (2d ed. 1967), *and see generally id.*, § 108.

the middle-aged woman who has spent most of her adult life caring for her husband and children is likely to find, if her marriage breaks up, that she is in a precarious position indeed.

It appears once to have been the case that depriving such a wife as I have described of the right to support was not regarded as manifestly unfair. I suggest, however, that this was so because of the widespread male attitude that infidelity on the part of the husband, while perhaps not quite his prerogative, was nevertheless to be expected as an aspect of his virility; women, on the other hand, were expected, at their peril, to remain chaste. We now recognize this double standard to be mere hypocrisy.

More has changed than our attitudes towards the sexes; the intellectual style or temper of the present law no longer commands our respect. As has been discussed, the premise of the present law is that the obligation to provide support is an incident of the marital relationship, which is conceived as a unity. Accept the premise, and the present law follows as a syllogism, inexorably: once the marital unity is severed, the obligation to provide support ceases. However, we no longer can accept the premise. It strikes us as scholastic reasoning from another day—as indeed it is. *See* A. Freedman and M. Freedman, Law of Marriage and Divorce in Pennsylvania § 107 (2d ed. 1967) (derivation of Pennsylvania divorce law from English ecclesiastical law). This is not to suggest that the law should no longer engage in abstract reasoning. Still, we have come to recognize, perhaps more readily than has sometimes been the case, that considerations of logical symmetry must yield to, or at least be tempered by, considerations of experience.[9]

**9.** This is hardly the place for an essay on jurisprudence. The general point was made by Holmes, in the famous passage that opens The Common Law (1923):

The life of the law has not been logic; it has been experience. The felt necessities of the time, the prevalent moral and

Given these changes, I am persuaded that the present premise of the law should also be changed. Instead of the obligation to provide support being defined as an incident of the marital unity, it should be defined in terms of the justifiable expectations that arise from the circumstances of being married, and from the economic and social realities of our society. In this view, while consideration would be given to the presence or absence of fault on the part of the spouse seeking support, this would not always be the decisive consideration; in addition there would be taken into account the conduct of the other spouse, and the numerous other factors that might produce a justifiable expectation of receiving support, such as the age, background, and earning capacity of the parties, the duration of the marriage, the present income of the parties, and their mental and physical health. In other words, when a spouse seeks support, all of the equities should be considered, not merely fault defined as misconduct that would support an action for divorce.

## B

This altered definition of the basis of the obligation to provide support is by no means either novel or revolutionary. It has been applied to the obligation to pay alimony after divorce, and could equally be applied to the obligation to provide support before divorce, as has been recently demonstrated in a notable article by Francis J. Morrissey, Jr., of the Philadelphia Bar.[10] Except for

political theories, intuitions of public policy, avowed or unconscious, even the prejudices which judges share with their fellow-men, have had a good deal more to do than the syllogism in determining the rules by which men should be governed.

The perhaps classic statement of the necessity to consider much more than logic is Cardozo's The Nature of the Judicial Process (1921). *See also* R. Pound, Introduction to the Philosophy of Law (1954); E. Cahn, The Sense of Injustice 13 (1949) ("The sense of injustice revolts against whatever is unequal by caprice.").

10. Morrissey, A Pennsylvania Primer for Alimony and Equitable Distribution, Pa.Bar Assn.Qtly., Oct. 1976 at 503.

Texas, Pennsylvania is the only jurisdiction in the United States that does not make provision for alimony after divorce. This is not to say that provision for alimony may not be attended with difficulties. As Mr. Morrissey observes,

> Surely the subtlest and most basic issue, one which permeates and vexes the whole concept of alimony and property distribution, is whether or not the fault of either party in bringing about the breakdown of the marriage should be material to the award of alimony or the distribution of marital property.[11]

Nevertheless, in a number of states, legislation has been enacted that the courts have construed as providing for alimony even when there has been fault. The results vary, as Mr. Morrissey points out. To me, the most sensible is what he describes as "[t]he middle ground":

> making fault not an absolute bar but permitting the court to take such fault into account in awarding alimony and distributing marital property  .  .  ..[12]

In this regard it is important to note that some years ago the law of Pennsylvania defined the obligation to pay alimony after divorce in terms very much like the terms in which I believe the obligation to provide support before divorce should be defined.[13] Pennsylvania's first comprehensive divorce law may be said to have been the Act of March 13, 1815, P.L. 150, 6 Sm.L. 286. This Act established various causes for divorce but made no provision for either spouse after divorce. By amendment, the Act of May 8, 1854, P.L. 644, provided that an innocent husband was permitted to obtain a divorce on the ground of cruel and barbarous treatment on the mandatory condition that the court award his wife alimony. By further amendment, the Act of June 25, 1895, P.L.

11. *Id.* at 507.

12. *Id.* at 508.

13. *See id.* at 503–04.

308, provided that the husband was permitted to obtain a divorce on the ground of indignities; an award of alimony to a wife divorced for cruel and barbarous treatment or for indignities was made discretionary with the court. The attitudes underlying these amendments were summarized by the Supreme Court in *Miles v. Miles*, 76 Pa. 357, 358 (1874), as follows:

> On the subject of alimony the law makes this plain difference between a husband and a wife plaintiff; on the ground probably that the duty of maintenance once assumed by him is not to be released, and thrown upon the public, without a good reason. He may dissolve the tie which binds him to her alone, so far as it makes his condition intolerable and his life burdensome, but as the head of the family and the maker of its wealth, he is not to be relieved from a duty which humanity and the rights of society demand him to fulfill.

## C

I should like to be able to conclude from the foregoing considerations that this court could redefine the basis of the obligation to provide support.[14] I believe, however, that that would be irresponsible.

14. The ability to apply the factors mentioned above, and other equitable considerations, in awarding support has been amply demonstrated by Judge CONSODINE in *Painter v. Painter*, 118 N.J.Super. 332, 287 A.2d 467 (1973). In *Painter* the Judge set forth and applied similar guidelines for the award of post-divorce alimony and the distribution of marital property. Judge CONSODINE wrote:

> Guideline criteria over the broad spectrum of litigation in this area include: (1) respective age, background and earning ability of the parties; (2) duration of the marriage; (3) the standard of living of the parties during the marriage; (4) what money or property each brought into the marriage; (5) the present income of the parties; (6) the property acquired during the marriage by either, or both parties; (7) the source of acquisition; (8) the current value and income producing capacity of the property; (9) the debts and liabilities of the parties to the marriage; (10) the present mental and physical health of the parties; (11) the probability of continuing present employment

In the first place, it would involve overruling not one or a few cases but an entire collection of cases, all relating to and depending upon each other, as the earlier discussion in this opinion has shown. In the second place, however, there is the more important consideration that the legislature has precluded such action. By the Act of April 4, 1925, P.L. 124, the legislature repealed the amendments effected by the Acts of 1854 and 1895, *supra*, and since then there has been no alimony after divorce, except in certain cases of mental illness. 23 Pa. C.S. §§ 45, 48; *and see Steinke v. Steinke*, 238 Pa.Super. 74, 357 A.2d 674 (1975) (concurring opinion). Thus the legislature has made plain its determination that the obligation of one spouse to provide financial assistance to the other is not to be decided according to the parties' justifiable expectations, as defined after consideration of all the circumstances of the marriage, but is rather to be regarded as an incident of the marital unity. As this court explained in *Hooks v. Hooks*, 123 Pa.Super. 507, 513, 187 A. 245, 247 (1936):

> If the appellant was entitled to an absolute divorce as the result of conduct of his wife, . . . it is reasonable that he should be fully restored to the single state, . . . with no ensuing obligation [to pay alimony] to his former wife.

at present earnings or better in the future; (12) effect of distribution of assets on the ability to pay alimony and support; and (13) gifts from one spouse to the other during marriage. *Id.* at 335, 287 A.2d at 469.

On appeal Justice MOUNTAIN added three other criteria derived from Section 307 of the Uniform Marriage and Divorce Act:

(1) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as a homemaker; (2) the value of the property set apart to each spouse; (3) The third criterion mentioned by Judge MOUNTAIN has been omitted because it duplicated (2) listed by Judge CONSODINE.] (4) economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of [the] children. *Painter v. Painter*, 65 N.J. 196, 211–212, 320 A.2d 484, 492 (1974).

567

I do *not* think "it is reasonable," whether one is referring to alimony after divorce or support before divorce. Given the legislature's contrary opinion, however, and the numerous cases that have recognized and implemented that opinion, I do not believe this court may now order the lower court to award support to a wife who by committing adultery has given her husband a ground for divorce, no matter how equitable such an award might be. I can only express the hope that the legislature will be persuaded that the law should be changed—not of course simply by what I have said in this opinion but by what others who have considered the matter far more thoroughly than I will say.

In the meantime, the order of the lower court was in accordance with the law, and should be affirmed.

CERCONE, J., joins in this opinion.