407 A.2d 1314

**COMMONWEALTH of Pennsylvania ex rel. Judith CARMACK**

v.

**Grandon H. CARMACK, Appellant.**

Superior Court of Pennsylvania.

Submitted March 12, 1979.

Decided July 26, 1979.

William H. Kaye, Chambersburg, and with him Kenneth F. Lee, Chambersburg, for appellant.

John R. Walker, District Attorney, Chambersburg, for Judith Carmack, appellee.

Before SPAETH, HESTER and MONTGOMERY, JJ.

MONTGOMERY, Judge:

This is an appeal by the defendant, Grandon H. Carmack, from an order of support in the amount of $20.00 per week, plus a $20.00 service charge made in favor of his wife, Judith Carmack. Appellant contends he had cause for a divorce on the grounds of adultery and indignities and, therefore, his obligation to support his wife had ended.

The parties were married in 1968 and separated July 10, 1977 when the defendant left his wife and the marital home. He refused to return, although requested to do so by his wife.

## ADULTERY

Following the separation, the wife developed a relationship with a Harry W. Moeller, permitted him to spend a night in her apartment, and had sexual relations with him on two occasions. Recognizing that neither the defenses of condonation nor connivance, nor the degree of emotional disturbance suffered by the wife could successfully be asserted by the wife, the lower court proceeded to consider the question whether the conduct of the defendant justified the entry of an order which would otherwise be denied because of the wife's conduct. This conduct consisted of his association with a Mrs. Rita Johnson for two years prior to the separation, and thereafter, of such a nature that adultery on his part could reasonably be inferred from the facts and circumstances and it was so found by the lower court. Thus, the question arises whether the wife's adultery bars her from any support regardless of his conduct. Relying on *Hellman v. Hellman,* 246 Pa.Super. 536, 371 A.2d 964 (1977), the lower court held that the husband's conduct was relevant and should be considered in determining a wife's right to support in order to avoid inequities. We must agree that the holding in *Hellman* is that a wife's right to support is not automatically terminated upon proof of her adultery, and that the conduct of the husband must be considered in determining that issue under the circumstances.

On appeal, an order of support will not be disturbed unless there is a clear abuse of discretion. In the present case, we are not prepared to say such abuse is present in light of the evidence showing the adulterous relationship the respondent maintained with Mrs. Johnson for two years prior to the separation and continuing thereafter, his abandonment of the marital home, his refusal of the wife's attempts at reconciliation, and the circumstances under which her two indiscretions occurred.

## INDIGNITIES

We find no merit in appellant's argument that he has suffered indignities to his person to such an extent that he

would be entitled to a divorce on this ground as well. Since his conduct with Mrs. Johnson created the suspicion from which much of his wife's criticism of him arose, he cannot be considered without blame for the incidents of which he complains.

Order affirmed.

SPAETH, J., files a concurring opinion.

SPAETH, Judge, concurring:

In *Hellman v. Hellman*, 246 Pa.Super. 536, 371 A.2d 964 (1977), the majority held that a lower court abuses its discretion when in a support action it refuses to consider evidence that the supporting spouse is guilty of marital misconduct. I dissented, 246 Pa.Super. at 547, 371 A.2d at 969, but, since the Supreme Court refused *allocatur*, I accept the majority's decision. One aspect of that decision, however, should be noted, for it is critical to deciding the present case.

In *Hellman* the majority claimed that it was not advocating that the lower court should " 'balance against each other [the parties'] mutual misdeeds.' " 246 Pa.Super. at 544 n.2, 371 A.2d at 968 n.2. How the lower court should consider a supporting spouse's misconduct if not by balancing, or comparing, it with the dependent spouse's misconduct was not explained by the majority. Indeed, the majority's reliance on the dissenting opinion in *Hawkins v. Hawkins*, 193 N.Y. 409, 422, 86 N.E. 468, 473 (1908), showed, in spite of its protestations, that it was itself engaged in a balancing of the equities.* It is therefore not surprising that in *Commonwealth ex rel. D'Andrea v. D'Andrea*, 262 Pa.Super. 302, 396 A.2d 765 (1978), this court understood *Hellman* as allowing a court to balance the equities.

---

* The majority quoted with approval the following language from Chief Justice CULLEN's dissent in *Hawkins* :

[A] single act of adultery [on the part of the wife], possibly committed at a time long past, and sincerely repented of, should not enable the husband to cast her off without support, though he may be living a life of continuous and [open] profligacy.
246 Pa.Super. at 543, 371 A.2d at 968.

202

In the present case the majority has reached its decision by balancing the equities. It has set off appellant's adulterous relationship with Mrs. Johnson, his abandonment of the marital home, and his refusal of appellee's attempts at reconciliation, against appellee's two adulterous incidents. Its decision therefore represents a second time that *Hellman* has been understood as holding that in support actions a court should consider and compare the misconduct of the parties. If the supporting spouse's misconduct is substantially greater than the dependent spouse's, then the court may, in its discretion, grant or continue a support order so that equity may be achieved. Because I agree that *Hellman* should be so understood, and because appellant's misconduct greatly exceeded appellee's, I concur in the majority's conclusion that the lower court did not abuse its discretion in granting appellee support.